J. Gerard HOGAN, Delores Hogan, Jerome S. Poker, Margaret H. Poker, on behalf of themselves and all residents of the State of Wisconsin who were paid retirement benefits by the United States Government in any one or all of the years 1982, 1983, 1984, 1985, 1986, 1987 and 1988, similarly situated, Plaintiffs-Respondents,

v.

Mark E. MUSOLF, Individually and as former Secretary of the State of Wisconsin Department of Revenue, Michael Ley, Individually and as former Secretary of the State of Wisconsin Department of Revenue, Karen A. Case, Individually and as former Secretary of the State of Wisconsin Department of Revenue, Mark D. Bugher, Individually and as Secretary of the State of Wisconsin Department of Revenue and all their unknown agents, employees, successors in office, assistants and all others acting in concert or cooperation with the current and former Secretaries of the State of Wisconsin Department of Revenue or at the Direction of the current and former Secretaries of the State of Wisconsin, Department of Revenue, Defendants-Appellants-Petitioners.

Supreme Court

1

*No. 89-1175. Argued May 29, 1991.—Decided June 26, 1991.*

(Also reported in 471 N.W.2d 216.)

4

For the defendants-appellants-petitioners the cause was argued by *F. Thomas Creeron, III,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the plaintiffs-respondents there was a brief by *Eugene O. Duffy, Gregory W. Lyons, Mark S. Poker,*

*Patricia E. Ostrenga* and *O'Neil, Cannon & Hollman, S.C.* Milwaukee and oral argument by *Mr. Duffy.*

WILLIAM A. BABLITCH, J.    This case does not involve the question of whether these retirees are entitled to a tax refund. Nor does it involve the question of the amount of such refund. It involves only the question of what route these retirees must take in pursuing their claim for refund. The primary issue presented is whether these retirees must exhaust their state administrative remedies before filing a sec. 1983 action in state courts. The defendants, the present and three former secretaries of the Department of Revenue (collectively the Department), seek review of a court of appeals' decision which allowed these retirees to seek their sec. 1983 relief in the state courts. The plaintiffs (retirees) brought this action in state court under 42 U.S.C. sec. 1983 alleging that the Department had violated, and was continuing to violate, their federal statutory and constitutional rights by exacting taxes that discriminate against retired federal employees. Our decision requires that we address four issues: 1) Are violations of sec. 111 regarding intergovernmental immunity claims actionable under 42 U.S.C. sec. 1983? We conclude they are. 2) Does federal law require state courts to entertain sec. 1983 actions in tax matters where the plaintiff has not exhausted established state administrative remedies? We conclude federal law does not so require if the state administrative remedies are plain, adequate, and complete. 3) Are Wisconsin's administrative remedies plain, adequate, and complete? We conclude they are. 4) Does Wisconsin law require these retirees to exhaust available state administrative remedies before commencing a sec. 1983 action in the Wisconsin courts? We conclude it does. Accordingly, we reverse the court of appeals' decision which affirmed

6

the circuit court's order granting injunctive relief to the plaintiffs and denying the Department's motion to dismiss.

The retirees commenced this action on April 17, 1989. The named plaintiffs, J. Gerard Hogan, Dolores M. Hogan, Jerome S. Poker, and Margaret H. Poker, have been Wisconsin residents from at least 1982 through the present. Mr. Poker and Mr. Hogan are former federal employees. Mr. Poker worked for the United States Postal Service for twenty-eight and one-half years, including three and one-half years of military service. Mr. Hogan worked for the Federal Bureau of Investigation for thirty-two years, including four years concurrent service in the Naval Reserve. As a result of their federal employment, Poker and Hogan received federal retirement benefits that were taxed by the State of Wisconsin.

The plaintiffs commenced this sec. 1983 action in the wake of the United States Supreme Court's decision in *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803 (1989). In *Davis,* the plaintiff asserted that he was due a state income tax refund on taxes paid on his federal retirement benefits because the Michigan tax system discriminated against federal retirees in violation of 4 U.S.C. sec. 111, which preserves federal employees' immunity from discriminatory state taxation.[1] The Michigan tax statutes exempted from taxation all retirement benefits paid by Michigan and its political subdivisions, while levying an income tax on federal retirement

---

[1] 4 U.S.C. sec. 111 provides in relevant part: The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

benefits. *Id.* at 805. The Court held that Davis was entitled to a refund of taxes paid because the Michigan tax scheme was contrary to sec. 111 and violated principles of intergovernmental tax immunity. *Id.* at 817.

The plaintiffs allege that the Wisconsin tax system has similarly discriminated against federal retirees. From 1963 until 1988, Wisconsin exempted the benefits of many retired employees of state and local government from income taxation. *See* Sec. 71.05(1)(a), Stats. 1987-88;[2] sec. 71.03(2)(d), from 1965 to 1985; and sec. 71.03(2)(g) 1963. During this same period, federal retirement benefits were not exempt from income taxation. Based on this discrepancy, the plaintiffs allege that the defendants violated the supremacy clause, art. VI, cl. 2, of the United States Constitution, principles of intergovernmental tax immunity articulated by the Court in *Davis,* and 4 U.S.C. sec. 111.

The retirees sought declaratory and injunctive relief against the defendants in their individual capacities pursuant to 42 U.S.C. sec. 1983,[3] in circuit court for Dane

---

[2] **71.05 Income computation. (1)** EXEMPT AND EXCLUDABLE INCOME. There shall be exempt from taxation under this subchapter the following:

(a) . . . All payments received form the employe's retirement system of the City of Milwaukee, Milwaukee county employes' retirement system, sheriff's annuity and benefit fund of Milwaukee county, policy officer's annuity and benefit fund of Milwaukee, fire fighter's annuity and benefit fund of Milwaukee, or the public employe trust fund as successor to the Milwaukee public school teachers' annuity and retirement fund and to the Wisconsin state teachers retirement system, which are paid on the account of any person who was a member of the paying or predecessor system or fund as of December 31, 1963, or was retired from any of the systems or funds as of December 31, 1963, but such exemption shall not exclude from gross income tax sheltered annuity benefits.

[3] 42 U.S.C. sec. 1983 provides in relevant part: "Every person who, under color of any statute . . . of any state . . . subjects, or

8

county. They also sought damages under a pendent state law claim of money had and received.

The Department responded to the plaintiffs' complaint by filing a motion to dismiss, asserting numerous defenses including the defense that the retirees had not exhausted their state administrative remedies. On May 19, 1989, the plaintiffs moved for a declaration that sec. 71.05(1)(a), Stats., is unconstitutional, for certification of the class of federal retirees, and for injunctive relief precluding the enforcement of sec. 71.05(1)(a) and establishing a constructive trust.

After determining it had personal jurisdiction over the Department and subject matter jurisdiction over this action, the circuit court enjoined the Department "from collecting, asserting, imposing or otherwise attempting to collect, assert, or impose any tax or liability upon or against any [Plaintiff] . . . from June 13, 1989 forward pending the resolution of this action on the merits," because the continuation of these activities would cause irreparable injury to the plaintiffs. In addition, the court ordered the Department to hold any money collected from the plaintiffs in a constructive trust. The court then certified the plaintiff class of federal retirees pursuant to sec. 803.03, Stats. The court did not hear or decide the issue of whether funds already collected by the Department should be returned to the plaintiffs.

The court of appeals granted the Department's petition for leave to appeal the circuit court's order on August 1, 1989. On August 9, 1989, 1989 Wisconsin Act 31, section 1817m, went into effect exempting for 1989

_____

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

and subsequent tax years the pension income of the federal retirees in the certified class. This provision of sec. 71.05, Stats., 1989–90 does not affect the liability of federal retirees for pre-1989 tax years.

The court of appeals affirmed the circuit court's order. In addition, the court held that the action had not been rendered moot by 1989 Wisconsin Act 31, section 1817m. We granted the Department's petition for review.

## I.

As an initial matter, we agree with the plaintiffs that violations of sec. 111 are actionable under 42 U.S.C. sec. 1983. The Department contends that 4 U.S.C. sec. 111 creates no enforceable rights under sec. 1983 because intergovernmental immunity claims are not individual "rights, privileges or immunities" within the meaning of sec. 1983. The Department further argues that because 4 U.S.C. sec. 111 is grounded on considerations of power between the state and federal government, rather than on considerations of individual rights, there can be no cause of action under sec. 1983. *See Consol. Freightways Corp. of Del. v. Kassel,* 730 F.2d 1139, 1146 (8th Cir. 1984); *Segundo v. City of Rancho Mirage,* 813 F.2d 1387, 1394 (9th Cir. 1987).

In *Golden State Transit Corp. v. City of Los Angeles,* 110 S. Ct. 444, 448 (1989), the Court established a two-step inquiry for determining whether sec. 1983 is available to remedy a statutory or constitutional violation. First, the plaintiff must assert the violation of a federal right. Second, even when the plaintiff has asserted a federal right, the defendant may show that Congress " 'specifically foreclosed a remedy under sec. 1983' by providing a 'comprehensive enforcement

10

mechanis[m] for protection of a federal right.' " *Id.* (citation omitted). The Court has repeatedly held that the coverage of sec. 1983 must be broadly construed. *See, e.g., Dennis v. Higgins,* 111 S. Ct. 865, 868 (1991). Furthermore, the Court has emphasized that it has "rejected attempts to limit the types of constitutional rights that are encompassed within the phrase 'rights, privileges, or immunities.' " *Id.* at 870.

The first part of the test requires us to consider three factors: (1) Does sec. 111 create a binding obligation on the governmental unit, or is it merely a congressional preference?; (2) Is the interest vague and amorphous, or specific and definite, capable of judicial enforcement?; and (3) Is the statute intended to benefit the plaintiffs? *Golden State,* 110 S. Ct. at 448. *Davis* establishes that sec. 111 creates a binding obligation on the state that is capable of judicial enforcement. The more difficult question is whether the statute was intended to benefit the plaintiffs.

In *Dennis,* the Court held that the imposition of illegal taxes contrary to the commerce clause by a Nebraska administrative agency gave rise to a sec. 1983 action. The Court determined that suits for violations of the commerce clause may be brought under sec. 1983 because the commerce clause, in addition to being a power-allocating provision, acts as a substantive restriction on permissible state regulation of interstate commerce. *Dennis,* 111 S. Ct. at 870, 872. Similarly, 4 U.S.C. sec. 111, as applied by the Court in *Davis,* imposes a substantive restriction on permissible state taxation of federal retirees in addition to allocating power between the state and federal government. *See Dennis,* 111 S. Ct. at 878–79 (Kennedy, J., dissenting) (suggesting that the Courts' rationale in *Dennis* creates a sec. 1983 cause of action when a state violates *Davis.*).

11

We conclude that the plaintiffs, by asserting a violation of sec. 111, have asserted a violation of a federal right. We also conclude that the Department has not shown that Congress specifically foreclosed a remedy by providing a comprehensive enforcement mechanism for protecting that right. Because sec. 111 protects federal retirees from discriminatory taxation, we are persuaded that violations of 4 U.S.C. sec. 111 are actionable under sec. 1983.

## II.

We must next consider whether federal law permits Wisconsin to require plaintiffs to exhaust state remedies in tax matters.

The plaintiffs argue that under the Court's decision in *Felder v. Casey,* 487 U.S. 131 (1988), a state cannot bar a plaintiff from bringing a sec. 1983 action because of the plaintiff's failure to resort to administrative procedures. The Department argues that the Court recognized an exception to this principle in *Fair Assessment in Real Estate Assn. v. McNary,* 454 U.S. 100 (1981), for actions challenging the administration of state taxing statutes. We agree with the Department that, when a state's administration of its tax statutes is challenged, federal law permits the states to require plaintiffs to exhaust their administrative remedies before pursuing a sec. 1983 claim if those remedies are fair, adequate, and complete.

*Felder* concerned a Wisconsin notice-of-claim statute that required plaintiffs who brought suit against a state or local governmental entity or officer to give notice of the claim to the government defendant and to refrain from filing suit for 120 days after providing such notice. This court dismissed Felder's sec. 1983 action

against the city of Milwaukee and certain police officers because he failed to comply with the notice-of-claim requirements in the Wisconsin statute. *Felder v. Casey,* 139 Wis. 2d 614, 408 N.W.2d 19 (1987). The Supreme Court reversed, holding that the notice-of-claim statute was preempted as inconsistent with federal law, based in part on its conclusion that the statute operated as an exhaustion requirement.

*Felder* established as a general rule that the states cannot impose an exhaustion requirement on plaintiffs who assert sec. 1983 claims in state courts. *Felder,* 487 U.S. at 146–150. *Cf. Patsy v. Florida Board of Regents,* 457 U.S. 496 (1982) (holding that plaintiffs need not exhaust state administrative remedies before instituting sec. 1983 claims in federal courts). The Court indicated that exhaustion requirements are disfavored because "the notion that a State could require civil rights victims to seek compensation from offending state officials before they could assert a federal action in state court" is "utterly inconsistent with the remedial purposes . . ." of sec. 1983. *Felder,* 487 U.S. at 149. Furthermore, the Court emphasized that sec. 1983 causes of action " 'exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable *in the first instance.*' " *Id.* at 148 (quoting *Burnett v. Grattan,* 468 U.S. 42, 50 (1984)). The Court also stressed that policy considerations alone do not justify the imposition of an exhaustion requirement and that such requirements are only appropriate if exhaustion is consistent with congressional intent. *Id.* at 149.

In addition to determining that the notice-of-claim statute imposed an exhaustion requirement that was contrary to federal law, the Court found that notice requirements violate federal law in two other respects:

13

> First, . . . the application of the notice requirement burdens the exercise of the federal right by forcing civil rights victims who seek redress in state courts to comply with a requirement that is entirely absent from civil rights litigation in federal courts. . . . Second, . . . the enforcement of such statutes in sec. 1983 actions brought in state court will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court. *Felder,* 487 U.S. at 141.

Thus, the Court strongly expressed its view in *Felder* that any state procedural requirement, including an exhaustion requirement, that interferes with or is contrary to federal law, must yield to the federal interest. *Id.* at 151.

The Supreme Court, however, has also expressed its view that there are sound policy reasons for courts to refrain from interfering with traditional administrative procedures for addressing tax claims against the state. These policy reasons, which were recognized by the court in *McNary* and acknowledged by Congress in enacting the Tax Injunction Act of 1937, 28 U.S.C. sec. 1341,[4] lead us to conclude that it is not contrary to federal law to impose an exhaustion requirement before entertaining sec. 1983 claims that challenge the administration of a state taxing scheme.

In *McNary,* the Court addressed the issue of whether a damages action could be brought in federal court under sec. 1983 to redress the allegedly unconstitu-

---

[4]The Tax Injunction Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

14

tional administration of a state tax system. The Court recognized that the determination of this question required a choice between the established policy calling for federal-court restraint when deciding cases that affect state tax systems and the established policy of the court that sec. 1983 claims are actionable regardless of whether the plaintiff complied with state exhaustion requirements. *McNary*, 454 U.S. at 101–05. After examining these policies, the Court held that taxpayers are barred by the principle of comity from asserting sec. 1983 actions against the validity of state tax systems in federal courts. *Id.* at 105.

The Court first acknowledged that it was well established that the federal courts were barred by the Tax Injunction Act and principles of comity from granting injunctive and declaratory relief in state tax cases. *Id.* at 107. The Court then examined the policies that support federal court restraint in tax matters to determine whether federal courts were also barred from granting damages relief in state tax cases:

> Such restraint [is] particularly appropriate because of the delicate balance between the federal authority and state governments, and the concomitant respect that should be accorded state tax laws in federal court. As the Court in [*Mathews v. Rodgers*, 284 U.S. 521, 525 (1932)] explained:
>
>> 'The reason for this guiding principle [of equitable restraint] is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal

operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.' *Id.* at 108.

In addition, both the majority opinion and the concurring opinion of Justice Brennan, joined by three other justices, relied upon Justice Brennan's discussion of the reasons for federal restraint in the area of state tax administration:

'The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.' *Id.* at 108–09 n.6; *Id.* at 137–38 n.27 (Brennan, J., concurring) (both quoting *Perez v. Ledesma,* 401 U.S. 82, 128, n.17 (1971) (Brennan, J., concurring in part and dissenting in part)).

Based on the strong policy reasons for not interfering with a state's taxing scheme, the Court concluded in *McNary,* 454 U.S. at 116, that taxpayers should seek

16

protection of their federal rights by state remedies, if those remedies are "plain, adequate, and complete," even when their claim is for damages.

The four justices who concurred in *McNary* disagreed with the majority that the jurisdiction of the court over an action for damages under sec. 1983 should be governed by principles of comity, but concluded that federal courts should refrain from hearing sec. 1983 actions pending exhaustion of state administrative procedures. *Id.* at 137 (Brennan, J., concurring). These justices found support for their position in congressional policy as reflected in the Tax Injunction Act, rather than in the judicial policy relied upon by the majority:

> Where the obligation to require exhaustion of administrative remedies may be fairly understood from congressional action, or is in accord with congressional policy, not only is sec. 1983 no bar, but the federal courts should be alert to further those policies. *Id.* at 136 (Brennan, J., concurring).

Although the majority opinion in *McNary* was motivated by federalism concerns, while the concurring opinion was motivated by a general recognition that state taxation is a uniquely sensitive local concern, both opinions in *McNary* reflect the view that state administrative tax procedures should not be undermined by sec. 1983 claims. Both opinions also suggest that a sec. 1983 tax claim does not mature until the state officials have the opportunity to rectify their alleged violation through the usual administrative channels. *See McNary,* 454 U.S. at 114 (recognizing that if sec. 1983 claims were entertained in federal court "[t]axpayers . . . would be able to invoke federal judgments without first permitting the State to rectify any alleged impropriety."); *McNary,* 454 U.S. at 135, n.24 (Brennan, J., concurring) (stating

that "[i]t surely seems appropriate that before being held accountable in court those officials have the opportunity fully to consider petitioners' claims within the administrative forum that provides the only basis for their involvement in this matter.").

The Supreme Court's primary interest in *McNary* was to avoid interference with state taxing practices by permitting states to have the opportunity to apply their remedies and procedures in tax matters before federal remedies are sought by a sec. 1983 action. We understand *McNary* as indicating that the Court is equally concerned that tax challenges be conducted according to state remedies as it is that they be conducted in a state forum. It would be no less disruptive of the state's internal economy and administrative tax procedures for a state court to act under sec. 1983 and suspend the usual tax collection and refund procedures of the state than it would be for a federal court to do so. In addition, regardless of which court interferes with the state's fiscal operations, tax officials would be improperly denied the opportunity to rectify any alleged impropriety before being subject to a sec. 1983 action. Accordingly, we conclude that the policies which motivated the Court's decision in *McNary* are equally applicable to sec. 1983 actions in state court.

On the strength of these policies, we conclude that there is an exception in state tax matters to the general rule recognized in *Felder* prohibiting exhaustion requirements. Unlike the notice-of-claim provision in *Felder,* 487 U.S. at 149, the application of an exhaustion requirement in state tax matters is consistent with congressional intent. In *McNary,* 454 U.S. at 110, the Court indicated that non-interference with state taxing schemes was Congress' primary purpose in enacting the Tax Injunction Act. That purpose is defeated regardless

of whether a state court or federal court entertains a sec. 1983 claim without requiring the plaintiffs to resort to the state's administrative procedures. As the Supreme Court of Oregon recently stated in addressing this issue in *Nutbrown v. Munn,* 311 Or. 328, 811 P.2d 131 (1991): "We see no basis for saying that exhaustion of administrative remedies will be *required,* as a matter of law, in federal courts, but may not even be *permitted,* as a matter of sovereign choice, in state courts." We also conclude that the Oregon court reached the proper conclusion when it stated:

> The four concurring justices in *McNary* and . . . the *Patsy* and *Felder* courts would [conclude that] requiring exhaustion is consistent with the congressional intent shown in the Tax Injunction Act. This does not mean that a *state* must, as a matter of federal law, impose a similar exhaustion requirement before it permits *its* courts to entertain such actions; neither Congress nor the federal courts has purported to control state trial procedure in such a way. What it does mean, we believe, is that a state *may* impose such a requirement *without offending* federal law. *Id.* at 15.

Furthermore, unlike in *Felder,* the enforcement of Wisconsin's exhaustion requirement will not produce a different outcome depending on whether the sec. 1983 litigation takes place in state or federal court.

We therefore conclude that federal law permits Wisconsin to require plaintiffs to exhaust state tax remedies if those remedies are plain, adequate, and complete.

## III.

In order for a state's exhaustion requirement to be valid, the state remedies must be "plain, adequate, and complete." *McNary,* 454 U.S. at 116.[5] We have no trouble concluding that Wisconsin's administrative remedies meet this standard. The aggrieved taxpayer can challenge the tax by applying for a refund with the Department under sec. 71.75, Stats. and subch. XIV of ch. 71. The Department's decision is reviewable by the Tax Appeals Commission under sec. 73.01 and the Commission's decision is judicially reviewable pursuant to sec. 73.015. The circuit court's decision is, of course, subject to review by the appellate courts of this state. This orderly procedure respects the fiscal operations of the state and offers to the reviewing courts the benefit of the agency's findings and conclusions in an area in which agencies have special expertise. The federal courts that have considered this question have properly concluded in a similar context that Wisconsin's tax remedies are "plain, adequate, and complete." *Gray v. Morgan,* 371 F.2d 172 (7th Cir. 1966), *cer. denied,* 386 U.S. 1033 (1967); *O'Brien v. Dreyfus,* 493 F. Supp. 476, 479–80 (E.D. Wis. 1980); *Zenith Dredge Company v. Corning,* 231 F. Supp. 584 (1964).

We do not agree with the plaintiffs' contention that the remedy is inadequate because they cannot obtain the same relief under the state remedies that are available under a sec. 1983 action. The inability of the plaintiffs to

---

[5]The phrase " 'plain, adequate, and complete' " is essentially the equivalent of the phrase " 'plain, speedy and efficient' " that is used in the Tax Injunction Act and other decisions of the Court. *McNary,* 454 U.S. at 116, n.8.

obtain the remedy they desire does not mean that they have been denied an adequate remedy. *Cf. Metzger v. Department of Taxation,* 35 Wis. 2d 119, 129, 150 N.W.2d 431 (1967). A number of federal courts have held that state law remedies need not be in parity with sec. 1983 remedies in order to be sufficient. *See, e.g., Miller v. Bauer,* 517 F.2d 27, 32 (7th Cir. 1975); *Sipe v. Ameranda Hess Corp.,* 669 F.2d 396, 407 (3rd Cir. 1982). Finally, as discussed earlier, the plaintiffs' inability to obtain the equitable relief they seek has a sound basis in judicial and legislative policy.

The plaintiffs also contend that it would be futile to require them to exhaust their administrative remedies because the Department of Revenue and the Tax Appeals Commission are without authority to declare the tax statutes unconstitutional or to award damages against the defendants in their individual capacities. We need not decide whether the Department of Revenue or the Tax Appeals Commission has the authority to declare a statute unconstitutional in order to determine that it is not a futile exercise for the plaintiffs to initiate their claim with the agencies. Where the United States Supreme Court has held that another state's taxing scheme, which is substantially similar to Wisconsin's, violates federal law or the constitution, we conclude that the Department and the Commission have the authority to determine whether the continued application of the Wisconsin taxing scheme also violates federal law or the constitution. *See Sawejka v. Morgan,* 56 Wis. 2d 70, 80, 201 N.W.2d 528 (1972) (deciding that the tax appeals commission has the authority to make the initial decision with respect to the validity or constitutionality of applying a tax statute in a given situation). The agencies would become ineffectual if they lost their authority to

21

review a case every time a constitutional claim was asserted. Furthermore, as a general matter, any constitutional claims may also be reserved for determination by the circuit court. The exhaustion of state remedies encompasses judicial review of the Commission's decisions. *See Ohio Civil Rights Comm'n v. Dayton Schools,* 477 U.S. 619, 629 (1986) ("[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding."); *See also Middlesex County Ethics Committee v. Garden State Bar Assn.,* 457 U.S. 423, 435–36 (1982). Finally, the Department and the Commission have the authority to grant a refund to these plaintiffs without deciding the constitutional issue on the ground that denying the federal retirees the same relief as state retirees violates 4 U.S.C. sec. 111.

We also conclude that the retirees' inability to obtain damages from the defendants in their individual capacities does not make the exhaustion requirement futile. The damages claimed against the defendants in their individual capacities are essentially a refund claim under a different name. The state's refund procedure adequately addresses these claims. Until that remedy is exhausted, "damages" are irrelevant. The defendants should, as *McNary,* 454 U.S. at 114, suggests, be permitted to "rectify any alleged impropriety" through the state's procedure.

We conclude that the state remedies available to the plaintiffs are plain, adequate, and complete and that it would not be futile to exhaust these remedies. By seeking administrative relief through the agencies and, if necessary, through judicial review of the administrative decision, the plaintiffs will have an opportunity to obtain

relief for the alleged improper taxation and have the constitutionality of the state's taxing scheme determined. If the alleged violations of their federal rights are not rectified through resort to the Wisconsin agencies and judicial review, then plaintiffs will be able to assert their sec. 1983 action in state or federal court.

## IV.

We must now determine whether Wisconsin law requires that plaintiffs who challenge the administration of state taxing statutes must exhaust available state administrative remedies before commencing a sec. 1983 action in Wisconsin court.

We note that as a general rule, the courts of this state must entertain sec. 1983 claims. In *Terry v. Kolski,* 78 Wis. 2d 475, 496–97, 254 N.W.2d 704 (1977), this court expressed its view regarding the responsibility of state courts to entertain sec. 1983 claims:

> It thus seems clear that courts of this state have jurisdiction to hear and decide sec. 1983 cases. In addition, they have an affirmative obligation under the Constitution of the United States to take jurisdiction whether or not the federal right asserted is pendent to a state claim. It is appropriate, in light of the interest of the state, as well as the interest of the United States, to take jurisdiction of these cases which are mandatory obligations under the Constitution and the statutes of the United States and the Constitution and laws of Wisconsin.

In tax matters, however, the Wisconsin statutes reflect the legislature's intent that persons who wish to contest the administration of the Wisconsin tax statutes

must first pursue relief through available administrative remedies. Aggrieved taxpayers seeking refunds must make a claim with the department of revenue pursuant to the procedure of sec. 71.75, Stats. and subch. XIV of ch. 71.[6] If not satisfied with the Department's ultimate determination, the taxpayer may then obtain a hearing from the Tax Appeals Commission under sec. 73.01(4), which provides in part:

> (4) POWERS AND DUTIES DEFINED. (a) Subject to the provisions for judicial review contained in s. 73.015, the commission shall be the final authority for the hearing and determination of all questions of law and fact arising under sub. (5) and . . . subch. XIV of ch. 71. . . .

The language of sec. 73.01(4) plainly reflects the legislature's intent that the Commission have exclusive initial jurisdiction for all questions of law and fact arising under subch. XIV of ch. 71. *See Jackson County Iron Co. v.*

---

[6]Section 71.75, Stats., provides in part:

**Claims for refund.** (1) Except as provided in ss. 46.255, 71.77(5) and (7)(b) and 71.93, the provisions for refunds and credits provided in this section shall be the only method for the filing and review of claims for refund of income and surtaxes, and no person may bring any action or proceeding for the recovery of such taxes other than as provided in this section.

(2) With respect to income taxes and franchise taxes, except as otherwise provided in subs. (5) and (9) and ss. 71.30(4) and 71.77(7)(b), refunds may be made if the claim therefor is filed within 4 years of the unextended date under this section on which the tax return was due.

\* \* \*

(6) Every claim for refund or credit of income or surtaxes shall be filed with the department of revenue. . . .

Subchapter XIV provides the procedure for petitioning the Department for redetermination of a denial of a refund.

*Musolf,* 134 Wis. 2d 95, 106–07, 396 N.W.2d 323 (1986).
The Commission's determination may be appealed to
the circuit court pursuant to sec. 73.015, Stats., which
provides that:

> **(1)** This section shall provide the sole and
> exclusive remedy for review of any decision or order
> of the tax appeals commission and no person may
> contest, in any action or proceeding, any matter
> reviewable by the commission unless such person has
> first availed himself or herself of a hearing before the
> commission . . ..
>
> **(2)** Any adverse determination of the tax
> appeals commission is subject to review in the man-
> ner provided in ch. 227. If the circuit court construes
> a statute adversely to the contention of the depart-
> ment of revenue, the department shall be deemed to
> acquiesce in the construction so adopted unless an
> appeal to the court of appeals is taken, and the con-
> struction so acquiesced in shall thereafter be followed
> by the department.

We recognized in *Metzger,* 35 Wis. 2d at 127,
regarding the substantially similar language in the prede-
cessors to these statutes, that a "more positive provision
of exclusive jurisdiction in the administrative procedure
can scarcely be found in our statutes." In *Metzger,* we
concluded that because of the plaintiffs' failure to
exhaust their administrative remedies under sec. 73.015,
the circuit court was without jurisdiction to entertain
the plaintiffs' suit to enjoin the department of taxation
from assessing gift taxes. *Id.* at 128–29. We recognized in
*Metzger* the long standing policy that "certainty in tax
collections is necessary for the continued function of
government, and that this necessity is the policy founda-
tion for the legislative limitations on the legal remedies
available to taxpayers." *Id.* at 129. Although *Metzger* did

not concern a sec. 1983 action, the decision reflects Wisconsin's policy that, in tax matters, " '[i]njunctive relief is not a substitute for the administrative procedure as clearly outlined and provided by legislative action.' " *Id.* at 125 (citation omitted). On the basis of the policy reasons discussed above and the legislature's expressed intent to have the Commission initially review contested tax matters, we conclude that plaintiffs who challenge the administration of the state's taxing statutes must exhaust their administrative remedies before commencing their sec. 1983 claims in the courts of this state.

We also note that our determination that plaintiffs challenging the administration of Wisconsin's taxing statutes must exhaust their state administrative remedies before commencing a sec. 1983 action is consistent with the view adopted by the majority of states that have addressed the question. In *Nutbrown,* 311 Ore. 328 (1991), the Oregon Supreme Court dismissed the plaintiffs' sec. 1983 action, which was based on an alleged violation of sec. 111, as in this case, because the plaintiff taxpayers failed to exhaust their administrative remedies. Numerous other state courts have also held that a sec. 1983 action may not be brought in state court to challenge the administration of state tax statutes when there is an adequate state remedy. *See, e.g., Linderkamp v. Bismarck School Dist. No. 1,* 397 N.W.2d 76 (N.D. 1986); *Stufflebaum v. Panethiere,* 691 S.W.2d 271 (Mo. banc 1985); *Johnston v. Gaston County,* 323 S.E.2d 381 (N.C. App. 1984), *rev. denied,* 329 S.E.2d 392 (1985); *Zizka v. Water Pollution Control Authority,* 490 A.2d 509 (Conn. 1985); *Raschke v. Blancher,* 491 N.E.2d 1171, 141 Ill. App. 3d 813 (1986).

For the reasons stated above, we conclude that plaintiffs who challenge the administration of Wiscon-

sin's taxing statutes must exhaust available state administrative remedies before commencing a sec. 1983 action in the courts of this state. The plaintiffs have a plain, adequate, and complete remedy through these administrative remedies in which they may obtain relief for any violation of their federal rights. Therefore, we reverse the decision of the court of appeals and dismiss the plaintiffs' action.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (concurring). I concur. I do not join Part III of the opinion.