BARNES, COMMISSIONER OF TEXAS STATE BOARD
OF INSURANCE, ET AL. *v.* E-SYSTEMS, INC.
GROUP HOSPITAL MEDICAL & SURGICAL
INSURANCE PLAN ET AL.

No. A–94.   Decided August 2, 1991

JUSTICE SCALIA, Circuit Justice.

Texas state officials responsible for the collection of taxes and the regulation of insurance seek a stay of the judgments of the Court of Appeals for the Fifth Circuit in these two sets of consolidated cases, pending action by this Court on their intended petition for certiorari.   The judgments at issue upheld decisions by the United States District Court for the Western District of Texas, which declared the Texas Administrative Services Tax Act, Tex. Ins. Code Ann., Art. 4.11A

(Vernon Supp. 1991), to be pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 *et seq.* (1988 ed. and Supp. I), enjoined its enforcement, and directed the State to issue refunds to the challenging taxpayers. *E-Systems, Inc.* v. *Pogue,* 929 F. 2d 1100 (1991).

The authority for a single Justice to issue a stay of the sort requested here is conferred by 28 U. S. C. § 2101(f). Before the predecessor to that provision was enacted in 1925, see Act of Feb. 13, 1925, 43 Stat. 940, similar action could be taken by the Court by issuing a supersedeas under the All Writs Act, 28 U. S. C. § 1651. See *Magnum Import Co.* v. *Coty,* 262 U. S. 159 (1923); *Ex parte Milwaukee R. Co.,* 5 Wall. 188, 190 (1867); *Hardeman* v. *Anderson,* 4 How. 640, 642–643 (1846). Under § 2101(f), as under the All Writs Act and the prior common law, a stay issues not of right but pursuant to sound equitable discretion; "it requires," as Chief Justice Taft said, "a clear case and a decided balance of convenience." *Magnum Import Co., supra,* at 164.

The practice of the Justices has settled upon three conditions that must be met before issuance of a § 2101(f) stay is appropriate. There must be a reasonable probability that certiorari will be granted (or probable jurisdiction noted), a significant possibility that the judgment below will be reversed, and a likelihood of irreparable harm (assuming the correctness of the applicant's position) if the judgment is not stayed. *Times-Picayune Publishing Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974) (Powell, J., in chambers). In my view all three of these conditions are met here.

The Tax Injunction Act, 28 U. S. C. § 1341, provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The Fifth Circuit's holding that this provision does not apply to state taxes that violate ERISA is in apparent conflict with the position taken by the Ninth Cir-

cuit. See *Ashton* v. *Cory*, 780 F. 2d 816, 821–822 (1986) (Kennedy, J.). See also *General Motors Corp.* v. *California Bd. of Equalization*, 815 F. 2d 1305, 1308 (CA9 1987) (Kennedy, J.). The question has been explicitly reserved in an opinion of this Court. *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 20, n. 21, 27, n. 31 (1983). The establishment of an ERISA exception to the Tax Injunction Act is alone a matter of some importance to the States. In addition, however, the Fifth Circuit's basis for the exception is that there can be no "plain, speedy and efficient remedy" in Texas courts because ERISA forbids their consideration of ERISA pre-emption challenges. *E-Systems, Inc.*, *supra*, at 1102. This means, apparently, that state courts cannot even grant refund relief, since we have held that refund relief alone may constitute "a plain, speedy and efficient remedy." See, *e. g.*, *California* v. *Grace Brethren Church*, 457 U. S. 393, 413–414 (1982); *Rosewell* v. *LaSalle National Bank*, 450 U. S. 503, 514–515 (1981). In addition, the Fifth Circuit rejected, without explanation, applicants' objection that the Eleventh Amendment forbade the District Court to require a refund of the ERISA pre-empted taxes from Texas' State Treasury. *E-Systems, Inc.*, *supra*, at 1101–1102. This is also in apparent conflict with the views of the Ninth Circuit. See *General Motors Corp.*, *supra*, at 1309. In my view these issues are of sufficient importance that a grant of certiorari by this Court is probable.

I also think there is a substantial possibility that the judgment below will be reversed. The Fifth Circuit's construction of the Tax Injunction Act and ERISA assumes that ERISA's creation of a private cause of action to enjoin violations of ERISA, 29 U. S. C. § 1132(a)(3), and its provision that this cause of action can be brought only in federal court, § 1132(e)(1), implicitly deprive the state courts of jurisdiction to entertain claims for monetary or equitable relief that rest upon the invalidity (under the Supremacy Clause) of a state

statute that violates ERISA. That is not an inevitable implication, and perhaps not a likely one. The Fifth Circuit's position on the Eleventh Amendment presumably rests upon the proposition that ERISA has impliedly authorized suit against States for monetary (as well as injunctive) relief, thus abrogating state sovereign immunity. But ERISA makes no mention of monetary relief, and in any event our cases do not favor implicit abrogation of Eleventh Amendment immunity. See *Dellmuth* v. *Muth*, 491 U. S. 223, 230 (1989); *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 242 (1985).

As to the third condition, the likelihood of irreparable harm: In my view the Tax Injunction Act itself reflects a congressional judgment, with which I agree, that unlawful interference with state tax collection always entails that likelihood. It produces in all cases not merely the possibility of ultimate noncollection because of the taxpayer's exhaustion of the funds but also an interference with the State's orderly management of its fiscal affairs.

> "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public." *Dows* v. *City of Chicago*, 11 Wall. 108, 110 (1871).

See also *California* v. *Grace Brethren Church, supra,* at 410, and n. 23. The same may be said of the asserted Eleventh Amendment violation: Directing a priority expenditure from the state treasury "may derange the operations of government, and thereby cause serious detriment to the public."

The conditions that are necessary for issuance of a stay are not necessarily sufficient. Even when they all exist, sound

equitable discretion will deny the stay when "a decided balance of convenience," *Magnum Import Co., supra,* at 164, does not support it. It is ultimately necessary, in other words, "to 'balance the equities'—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Rostker* v. *Goldberg,* 448 U. S. 1306, 1308 (1980) (Brennan, J., in chambers) (citations omitted). The likelihood that denying the stay will permit irreparable harm to the applicant may not clearly exceed the likelihood that granting it will cause irreparable harm to others. (This depends, of course, not only upon the relative likelihood that the merits disposition one way or the other will produce irreparable harm, but also upon the relative likelihood that the merits disposition one way or the other is correct.) Or the irreparable harm threatened to the applicant, while more likely, may be vastly less severe. The balancing seems to me quite easy in the present case, since I am aware of no irreparable harm that granting the stay would produce. The State's credit remains good, and I have been advised of no emergency need for the funds already paid under protest or for any funds that will be collected before termination of the litigation.

The application for stay of the judgments of the Fifth Circuit Court of Appeals is granted, pending applicants' timely filing, and this Court's disposition, of a petition for certiorari.

## STATEMENT SHOWING THE NUMBER OF CASES FILED, DISPOSED OF AND REMAINING ON DOCKETS AT CONCLUSION OF OCTOBER TERMS, 1988, 1989 AND 1990

| | ORIGINAL | | | PAID | | | IN FORMA PAUPERIS | | | TOTALS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1988 | 1989 | 1990 | 1988 | 1989 | 1990 | 1988 | 1989 | 1990 | 1988 | 1989 | 1990 |
| Number of cases on dockets | 14 | 14 | 14 | 2,587 | 2,416 | 2,351 | 3,056 | 3,316 | 3,951 | 5,657 | 5,746 | 6,516 |
| Number disposed of during term | 2 | 2 | 3 | 2,203 | 2,051 | 1,986 | 2,625 | 2,879 | 3,423 | 4,830 | 4,982 | 5,412 |
| Number remaining on dockets | 12 | 12 | 11 | 384 | 365 | 365 | 431 | 437 | 528 | 827 | 814 | 904 |

| | TERMS | | |
|---|---|---|---|
| | 1988 | 1989 | 1990 |
| Cases argued during term | 170 | 146 | 125 |
| Number disposed of by full opinions | 156 | 143 | 121 |
| Number disposed of by per curiam opinions | 12 | 3 | 4 |
| Number set for reargument | 2 | 0 | 0 |
| Cases granted review this term | 147 | 123 | 141 |
| Cases reviewed and decided without oral argument | 108 | 79 | 109 |
| Total cases to be available for argument at outset of following term | 81 | 57 | 70 |

June 28, 1991