137 F.3d 484
 21 Employee Benefits Cas. 2569,
Pens. Plan Guide (CCH) P 23940Y
Laura DARNE, Plaintiff-Appellant,
v.
STATE OF WISCONSIN, DEPARTMENT OF REVENUE, Cate Zeuske
* and Bruce Gamber, Revenue Agent,
Defendants-Appellees.
 No. 95-3615.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 11, 1997.
Decided Feb. 23, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied April 23, 1998.
 
 Laura Darne, Green Bay, WI, pro se, John Y.E. Lee (argued), Oppenheimer, Wolff & Donnelly, Chicago, IL, for Plaintiff-Appellant.
 F. Thomas Creeron (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants-Appellees.
 John Lee, John Y.E. Lee (argued), Oppenheimer, Wolff & Donnelly, Chicago, IL, for Amicus Curiae.
 Before POSNER, Chief Judge, EASTERBROOK and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 In this action, Laura Darne sought declaratory and injunctive relief against the State of Wisconsin ("State"), the Secretary of the Wisconsin Department of Revenue ("Secretary") and a subordinate officer to prevent them from collecting any taxes which have been or might be assessed against her under Wisconsin Statute § 71.83(1)(a)6. That section imposes a tax penalty of 33% of the federal early withdrawal fee that is imposed on funds removed from certain qualified retirement plans. Before the district court, Ms. Darne contended that this section of the Wisconsin tax code was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The district court disagreed and dismissed the case on the ground that it was barred by the Eleventh Amendment and the Tax Injunction Act of 1937 ("TIA"), 28 U.S.C. § 1341. For the reasons set forth in the following opinion, we affirm the judgment of the district court.[1]
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 During the 1980s, Laura Darne invested funds on a tax-deferred basis through corporate retirement programs offered by her employers under ERISA. In 1993, Ms. Darne withdrew $6,844.67 from her retirement accounts; in 1994, she withdrew an additional $7,069.07. These were early withdrawals of the retirement funds. Consequently, the withdrawals were subject to a 10% early withdrawal fee under federal law. See 26 U.S.C. § 72(t)(1). Ms. Darne appropriately reported the withdrawals as income and paid the 10% fee on her federal tax returns for 1993 and 1994.
 
 
 4
 The State of Wisconsin assesses an additional tax penalty for early withdrawal of retirement funds. See Wis. Stat. § 71.83(1)(a)6. The State law penalty requires a payment of 33% of the applicable federal early withdrawal penalty to the State. Ms. Darne informed Wisconsin in a letter submitted with her 1993 state tax return that she would not pay Wisconsin's early withdrawal fee because she believed the State statute violated ERISA.[2] Ms. Darne then filed, in January 1995, this action seeking declaratory and injunctive relief. She sought both a declaration that the Wisconsin tax penalty law was preempted by ERISA and an injunction against the collection of any taxes due under the law.
 
 
 5
 The Wisconsin Department of Revenue ("Department") sent Ms. Darne a notice of delinquent tax, dated February 20, 1995, prior to any action on her suit by the district court. Ms. Darne apparently did not receive this notice until February 24th, the same day that she received a letter from her bank indicating that it had complied with a "Notice of Levy" dated February 23, 1995, which the Department had sent to the bank. The bank had remitted to the Department from Ms. Darne's account $288.39, the amount due under the Wisconsin statute for the 1993 early withdrawal penalty plus interest.
 
 
 6
 The defendants filed their motion to dismiss the suit on March 18, 1995. Ms. Darne was granted leave to amend her complaint on March 28, 1995, to join Bruce Gamber, the revenue agent for the Department who issued the levy notice, and Mark Bugher, the Secretary of the Department. Ms. Darne also added vague theories of liability in the amended action, alleging that the levy of her bank account funds violated her constitutional rights under the Fourth and Fourteenth Amendments and that the levy of her funds constituted theft by Gamber. Based on these theories, Ms. Darne sought to enjoin Wisconsin from collecting the additional tax for which she would be liable as a consequence of her 1994 early withdrawal of retirement funds. She also sought declaratory relief to the same effect. Essentially, therefore, the claims before the district court included requests for retrospective monetary relief for the money taken from her bank account, prospective injunctive relief for future collection of funds under the Wisconsin statute and declaratory relief stating that the Wisconsin statute violates ERISA.
 
 B. Decision of the District Court
 
 7
 The district court, on September 22, 1995, entered an order disposing of all of Ms. Darne's claims. The court determined that the Eleventh Amendment barred the claims brought against Wisconsin and the Department because Congress had not abrogated expressly the State's immunity through ERISA and the State had not consented to the suit. The court also determined that the Eleventh Amendment barred any claims of retrospective monetary relief against the Secretary or Gamber because the relief would have to be paid from Wisconsin's treasury.
 
 
 8
 The court next concluded that the Eleventh Amendment was not a bar to Ms. Darne's claims for declaratory and injunctive relief against the Secretary and Gamber under the Ex parte Young doctrine. However, the court held that the Tax Injunction Act barred those claims. In doing so, it determined that ERISA does not preempt or supersede the TIA. The district court therefore dismissed Ms. Darne's remaining claims for injunctive and declaratory relief.
 
 II
 DISCUSSION
 A. Eleventh Amendment
 
 9
 Under the Eleventh Amendment, states are generally immune from suit "regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The claim for monetary relief for payments already made is, of course, barred by the Supreme Court's holding in Edelman v. Jordan, 415 U.S. 651, 669, 94 S.Ct. 1347, 1358-59, 39 L.Ed.2d 662 (1974). See also Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The claims for declaratory and injunctive relief fare no better. See Cory v. White, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).
 
 
 10
 Recently, in Marie O. v. Edgar, 131 F.3d 610, 615 (7th Cir.1997), we had occasion to rehearse at some length the exceptions to a state's immunity under the Eleventh Amendment. We noted that three exceptions to the constitutional bar exist. First, suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment. Second, individuals may sue directly a state when Congress has abrogated the immunity in unequivocal terms and pursuant to a valid exercise of its own power. Finally, a suit may be brought against a state directly when a state has waived its immunity and validly consented to suit in federal court. Here, with respect to Ms. Darne's contention that she may sue the State directly, only the second of these exceptions is at issue.
 
 
 11
 The district court correctly held that the Eleventh Amendment bars Ms. Darne's claims against Wisconsin. Even if we were to assume that such an abrogation had an adequate constitutional foundation, see Seminole Tribe of Florida v. Florida, 517 U.S. 44, 57, 71-74, 116 S.Ct. 1114, 1124, 1131-32, 134 L.Ed.2d 252 (1996), we could not accept Ms. Darne's argument that ERISA's complete preemption provision is tantamount to an implicit abrogation of the Eleventh Amendment by Congress.
 
 
 12
 In Dellmuth v. Muth, 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989), the Supreme Court made very clear that we are to find a congressional abrogation of a state's immunity to suit in federal court only when that intention is both "unequivocal and textual." Id. at 230, 109 S.Ct. at 2401; accord Seminole Tribe, 517 U.S. at 55-56, 116 S.Ct. at 1123; Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); Barnes v. E-Systems, Inc., Group Hosp. Med. & Surgical Ins. Plan, 501 U.S. 1301, 1304, 112 S.Ct. 1, 3, 115 L.Ed.2d 1087 (1991) (Scalia, J., in chambers). Although our colleagues in the Fifth Circuit may have reached the opposite conclusion without discussion, see E-Systems, Inc. v. Pogue, 929 F.2d 1100 (5th Cir.), cert. denied, 502 U.S. 981, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991), we believe that the better view is the one reached by the Sixth Circuit in Thiokol Corp. v. Department of Treasury, 987 F.2d 376, 381-82 (6th Cir.1993). The text of ERISA simply falls short of the clarity by which we would expect Congress to abrogate such an important guarantee of state sovereignty. "While no provision expressly excludes states as potential defendants, neither does any provision expressly include states or waive their traditionally held immunity from suits in federal court." Id. at 382.
 
 B. The Tax Injunction Act
 
 13
 In addition to her claims for relief against the State, Ms. Darne also sought declaratory and prospective injunctive relief against the defendant tax officials. We now must address whether the Tax Injunction Act precludes the district court's granting such relief.[3]
 
 
 14
 Ms. Darne submits that the district court erred in determining that the TIA precluded it from entertaining these claims. She points out that the TIA prevents a district court's enjoining the collection of a state tax only if there is "a plain, speedy and efficient" remedy in a state court. In this case, she submits, there could be no such state remedy because her action was brought under ERISA. ERISA actions by beneficiaries seeking injunctive relief for violations of ERISA's terms are exclusively within the jurisdiction of the federal courts.[4] Therefore, Ms. Darne contends, a suit seeking an injunction against Wisconsin's future collection of the State penalty tax and a declaration that the State tax violates ERISA can only be brought in the district court. There is no adequate remedy in State court.
 
 
 15
 Acknowledging that this circuit has not addressed this tension between ERISA and the TIA, Ms. Darne points out that three other circuits have agreed with the reasoning that no plain, speedy and efficient remedy exists in state court when a claim is brought under ERISA because ERISA actions are exclusively within the province of federal court. See Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 714 (2d Cir.1993), rev'd sub nom. on other grounds, New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); Thiokol, 987 F.2d at 380-81; E-Systems, 929 F.2d at 1102-03.
 
 
 16
 The Supreme Court has reserved this issue on two occasions,[5] and it has divided the circuits. Section 1132(a)(3)(A) of the ERISA statute provides that a participant like Ms. Darne has the right to bring an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A). Subsection (e) of the same section vests exclusive jurisdiction over such civil actions in the district courts. One of the provisions "of this subchapter" is ERISA's preemption provision. See 29 U.S.C. § 1144(a). It is not at all clear, however, that Congress intended that § 1132(a) ought to be interpreted to preclude the maintenance of a refund action for state taxes in state court.
 
 
 17
 Although we have great respect for the thoughtful opinions of our colleagues in the circuits that have taken a contrary view, we believe that the reasoning of the Court of Appeals for the Ninth Circuit in Ashton v. Cory, 780 F.2d 816 (9th Cir.1986), presents a view more compatible with the congressional intent of both ERISA and the TIA. In Ashton, then-Judge, now-Justice, Kennedy reasoned that the available legislative evidence simply did not support the conclusion that Congress, in enacting ERISA, intended to create an exception to the TIA and its strong policy of protecting the ability of the states to collect revenue.
 
 
 18
 There can be no question that there is a strong federal policy, embodied both in the TIA and the antecedent equity practice, that federal courts ought not interfere with the collection of state taxes. See California v. Grace Brethren Church, 457 U.S. 393, 409-11, 102 S.Ct. 2498, 2508-09, 73 L.Ed.2d 93 (1982); Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 102-03, 102 S.Ct. 177, 179-80, 70 L.Ed.2d 271 (1981). Like our colleagues in the Ninth Circuit, we are not willing to infer that Congress, in enacting regulatory legislation as comprehensive as the ERISA statute, "intended impliedly to take the drastic step of carving out an exception to the Tax Injunction Act." Ashton, 780 F.2d at 822. State taxation proceedings are quite different from the common understanding of an equitable action to enforce one's rights. Given the strong policy of federal abstinence from interference in state taxation matters embodied in the TIA, we think that it is an unrealistic stretch of the language of § 1132 to hold that it encompasses state tax refund matters. See Barnes, 501 U.S. at 1303-04, 112 S.Ct. at 2-3. Although such an interpretation creates the possibility of some lack of uniformity in the interpretation of ERISA, that possibility already exists whenever ERISA preemption is raised defensively in a state action.
 
 
 19
 Even though we hold that ERISA is not an exception to the TIA, the strictures of the TIA only apply if Wisconsin otherwise provides a "plain, speedy and efficient" remedy for taxpayers seeking to challenge Wisconsin taxes. We believe that the district court was correct in its estimation that current Wisconsin tax practice does provide such a remedy. See Gray v. Morgan, 371 F.2d 172, 174 (7th Cir.1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967); Hogan v. Musolf, 163 Wis.2d 1, 471 N.W.2d 216, 223 (1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992). Consequently, Ms. Darne is barred from seeking to enjoin in federal court the collection of the Wisconsin taxes for which she is liable.
 
 Conclusion
 
 20
 Ms. Darne's action was brought as an attempt to have a federal court enjoin the State of Wisconsin from collecting its taxes notwithstanding Wisconsin's procedures to challenge such collection. That action cannot be entertained in federal court in light of the principles of federalism embodied in the Eleventh Amendment and the Tax Injunction Act of 1937.[6] Accordingly, the judgment of the district court is affirmed.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure, Cate Zeuske, Secretary of the Wisconsin Department of Revenue, has been substituted in this action for former Secretary Mark Bugher
 
 
 [1]
 We have jurisdiction over this appeal. Although the docket sheet reflects that the district court signed and filed the final judgment on September 27, 1995, it also indicates that the "[e]ntry date" on which the Clerk entered the judgment on the docket was October 3, 1995. It is this latter date that triggers the time for filing a notice of appeal. Therefore, Ms. Darne's filing of that notice on November 2, 1995, was timely. Federal Rule of Appellate Procedure 4(a) requires filing of the notice of appeal within 30 days after entry of the judgment or order appealed from. Federal Rule of Civil Procedure 79(a) indicates that an entry of an order of judgment must reflect the date the entry was made
 We have indicated that, "[a]bsent the precise identification of the date of entry, the parties and the courts will remain uncertain as to the date upon which an appeal will become untimely." Stelpflug v. Federal Land Bank of St. Paul, 790 F.2d 47, 50 (7th Cir.1986) (per curiam). In Stelpflug, the court held that although the docket contained an entry indicating that an order disposing of the case had been signed on a given date, judgment never was entered properly in the case because the docket did not indicate the date of the entry of that order on the docket sheet. The court noted that such a notation of the date of entry is required because circumstances can develop in which an order or judgment is signed by the judge, but the entry of that order on the docket may not occur until a later date. Id. Other cases have held similarly. See, e.g., Ziebart Int'l Corp. v. After Market Assocs., Inc., 802 F.2d 220, 221 (7th Cir.1986) ("These findings and conclusions, together with an order and a judgment for defendant, all dated August 1, 1984, were entered in the docket on August 7, 1984. It is from the judgment so entered (and not entered on the date stated in the notice of appeal [August 1] ) that this appeal is taken."); Berman v. Schweiker, 713 F.2d 1290, 1293 n. 8 (7th Cir.1983) ("On August 17, 1981, the clerk of the court entered judgment ... implementing the court's August 14 memorandum order. The August 17 judgment was not recorded on the docket, however, until September 2. Since entry of judgment is not completed until it is recorded on the docket, ... defendant's time within which to file a notice of appeal commenced on September 2.").
 We also note that Ms. Darne had filed, on October 20, 1995, a motion to extend the time in which to file her notice of appeal on the ground that she had not received notice that judgment had been entered until October 19, 1995. The district court denied that motion as moot on February 13, 1996, indicating that she had timely filed her notice of appeal.
 
 
 [2]
 Specifically, Ms. Darne relies on the preemption provision in ERISA as supporting the proposition that a state law that taxes funds related to an ERISA plan is a violation of federal law. The preemption section states in part that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a)
 
 
 [3]
 The TIA provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341
 
 
 [4]
 See 29 U.S.C. § 1132(e)(1) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary....")
 
 
 [5]
 See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 652 n. 4, 115 S.Ct. 1671, 1675 n. 4, 131 L.Ed.2d 695 (1995); Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 20 n. 21, 103 S.Ct. 2841, 2852 n. 21, 77 L.Ed.2d 420 (1983)
 
 
 [6]
 Ms. Darne also contends that the district court failed to address certain of her claims in deciding her case and that these claims should be remanded for further consideration. Specifically, Ms. Darne maintains that she has asserted a theft claim against the State officials involved in levying her bank account and a claim under 42 U.S.C. § 1983 based apparently on vaguely alleged constitutional infractions. After a review of the pleadings, we believe the district court adequately addressed all of Ms. Darne's claims through its holdings on the Eleventh Amendment and TIA inquiries. To the extent that Ms. Darne's complaint could be construed liberally as asserting a § 1983 claim that would not be barred under the other grounds of decision, see Wright v. Tackett, 39 F.3d 155, 157 (7th Cir.1994) (complaints of pro se plaintiffs are liberally construed), cert. denied, 513 U.S. 1150, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995), it would be barred by the principle of comity. As explained by the Supreme Court in Fair Assessment in Real Estate Association v. McNary, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981), "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." The Court stated further that "[s]uch taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete." Id
 In making this statement regarding the adequacy of the remedies, the Court noted that it could discern no appreciable difference between "plain, adequate, and complete" as used in the context of equitable restraint and "plain, speedy and efficient" as used in the TIA context. Id. at 116 n. 8, 102 S.Ct. at 186 n. 8. Because we have just determined that there is an adequate state remedy, we hold that Ms. Darne's claims are not properly in federal court. Moreover, because there are no remaining federal claims, this court will not investigate further whether Ms. Darne has adequately set forth any claim based on a state law theory of conversion.