HERMANSEN and another, Appellants, vs. CITY OF LAKE GENEVA, Respondent.

*February 7—March 6, 1956.*

For the appellants there were briefs and oral argument by *Sturges P. Taggart* and *John G. McCollow,* both of Lake Geneva.

For the respondent there was a brief and oral argument by *Hugh L. Burdick,* of Lake Geneva, attorney, and *J. Arthur Moran* of Delavan of counsel.

FAIRCHILD, C. J. An abstract of the facts setting forth the history of the development of the present controversy is outlined in the above statement of facts. The record shows the questions considered and determined in the former action tried in 1928 between the same parties and naturally and logically points out the immediate importance of considering the issues litigated in that former action. There we find the determination of facts and rules of law which control over the questions now before us. That action was determined in favor of the plaintiffs' predecessors in title, and the judgment is now claimed by the plaintiffs to be *res judicata* and a bar to the defense claimed by the city of Lake Geneva in this action. Our inquiry, of course, must be in accordance with the rule that a judgment is conclusive between the parties and their privies in a second action on the same claim or cause of action as to all questions that were or ought to have been litigated in the first cause of action. A judgment pleaded in bar or given in evidence in estoppel is sufficient and controlling as to every question within the issues in the cause

when it was rendered between the parties to that litigation, and remains so till reversed or set aside in due course of law. The issues determined are "conclusive as to the truth of the matter involved in that and any action subsequently tried to enforce the same cause of action whether in the same or in any other court." *Rowell v. Smith,* 123 Wis. 510, 516, 102 N. W. 1; *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599.

Defendant city seeks to defeat plaintiffs' right to control and possession of that portion of the street vacated, and urges that plaintiffs' right is not based on issues and questions determined as an issue in the 1928 trial. However, the fourth finding of fact made in that action reads:

"That said street, or the portion thereof bounded upon the east by Center street, upon the west by Broad street, upon the north by the south line of block 30, aforesaid, and upon the south by the stream (known as White river), a navigable watercourse which forms the outlet of Geneva lake, was duly vacated by the common council of the city of Lake Geneva, by ordinance No. 42 of said city, adopted on the 24th day of April, 1899, which ordinance has never been repealed, modified, or amended, but remains in full force and effect."

The seventh finding is:

"That on November 3, 1911, the city of Lake Geneva conveyed said premises to Lake Geneva Hotel Company, a Wisconsin corporation, by warranty deed containing, among other provisions, a condition that there should be erected thereon a new hotel building within eighteen months from October 23, 1911, and the present hotel building was erected by said grantee pursuant to the condition contained in said deed. By foreclosure of a mortgage and subsequent mesne conveyances, the title became vested in A. H. Thierbach and E. T. Nussbaum, on October 23, 1915, and they organized the defendant corporation Hotel Geneva Company to whom they conveyed said premises on June 1, 1917."

Finding 8 reads:

"That upon acquiring the title to said hotel property in 1915, the said A. H. Thierbach and E. T. Nussbaum entered into possession of the same and they and their said grantee, Hotel Geneva Company, have ever since been in the continuous and exclusive possession of and engaged in operating the hotel upon said premises, and in connection therewith entered upon and improved the portion of said premises in controversy in this action, by building and maintaining a circular driveway thereon in front of the hotel building, improving and maintaining down to the year 1926, a driveway entrance to the hotel grounds from Center street, and beautifying the land between the hotel building and the river front by the planting of flowers and shrubbery."

In other portions of the findings, acts consistent only with the ownership and performed in reliance upon the conveyance to plaintiffs' predecessors by the city appear to have occurred. In the 12th finding the court found that use by the public of said premises was permissive.

There can be no doubt but that the ownership of those premises, which are the same premises the ownership of which is now challenged by the city, as well as the accompanying riparian rights, were before the court litigated and determined in that action. In his memorandum decision, the trial judge said: "For the reasons argued by counsel for defendant, as to fact and law, which need not be repeated here, the decision of the court is that the defendant is entitled to judgment." It was stipulated that the file in the 1928 action be received in evidence in this case, and the briefs were a part of and included in the file. They disclose that the question in issue was whether or not the strip in controversy in the 1928 action was at that time a public highway or street, or whether the hotel company owned it unburdened by public easement. The evidence introduced was of such a nature that spoke of the rights of the different parties to the absolute control and

ownership of the premises. The exhibits include deeds, foreclosure proceedings, and positive claims.

The judgment granted plaintiffs' predecessors in title in that 1928 action was based on findings of ownership of the former street. The findings continue in referring to the facts above mentioned and are of similar importance relating to the ownership and control of the premises; and these, together with the pleadings and proceedings as shown by the arguments and decision of the court in that 1928 action warranted the conclusion reached by Judge BELDEN, the trial judge, that his decision there made under the pleadings was based on the proof that the title and ownership were in these plaintiffs and their predecessors in title. Those findings are to the effect that the city conveyed the south half of block 30, including the street, to the plaintiffs' predecessors in title; that since 1912 the hotel company's successors in title were in continuous and exclusive possession of the premises, including the street; that travel over the parcel in question was permissive only and not adverse under a claim of public right; that the work performed by the city at various times upon the strip was not done under any claim of public right of use adverse to the hotel's claim; that the premises were bounded on the south by the outlet of Geneva lake so as to include the bank of the outlet. The conclusions based on those findings warrant the judgment there entered, and, because the issues are again raised here, that former judgment destroys the merit of the defendant's claim to any right to interfere with the plaintiffs' riparian rights. Every right and consideration now claimed by plaintiffs were before the court and contested in the former trial.

Where title to or rights or interests with respect to real property "is directly put in issue, whether by the pleadings or the course of the litigation, and is tried and determined, or might and should have been litigated as within the subject of the controversy, the judgment is conclusive thereon

in all further litigation between the same parties or their privies." 50 C. J. S., Judgments, p. 228, sec. 735. See also 30 Am. Jur., Judgments, p. 920, sec. 178.

More-formal pleadings and more-specific phrases might have been used, but, the findings and decision being as they are, it follows that the contest between the parties was disclosed by the record and by evidence in the trial, and that the former trial was to determine the ownership of this particular property and the rights accompanying it. No doubt can exist as to what the controversy was over. If any confusion were present and a doubt about the ownership being in plaintiffs existed, and resort to extraneous evidence became necessary, under the rules permitting such, as suggested in 2 Freeman, Judgments (4th ed.), p. 1618, sec. 765, and in 4 Jones, Commentaries on Evidence (2d ed.), p. 3447, sec. 1854, then the 1942 request of the city for the permission under which it did construct the piers and boat stalls would be a very comfortable and assuring admission that all was thoroughly understood by all interested parties.

What caused the change in attitude later may be charged to subsequent developments suggesting some advantage to the city of Lake Geneva, and causing that interested party to seek a benefit that does not belong to it; but the absence in a legal document of some desired phrase will not destroy the meaning of general and sufficient expressions used disclosing issues tried and the real meaning sought to be declared by the findings and judgment. The matters embraced in the pleadings indicate the same issues adjudicated in the 1928 action, and that trial so sufficiently met the requirements of showing that the issues in that action are the same as in this as to constitute a defense (*res judicata*) against defendant's claims.

The question as to the expense to be incurred in connection with the moving of the structures placed within the riparian rights by the defendant was not considered and determined

below. Therefore the question of who shall pay the expenses of removing the piers, slips, etc., permitted to be installed, as they were, is not now passed upon. The stipulations as to removal expenses is a matter of contract to be determined upon the remand of these proceedings to the court below.

We notice also that in the petition for permission to construct piers, boat stalls, etc., which was sought by the city of Lake Geneva and set forth in the resolution of 1942, that the city stated then that the ownership of the bed of the river is in the plaintiffs. The ownership of the bed was not involved in the 1928 litigation, and, of course, it was not conveyed by that resolution. The plaintiffs here seek to hold what was granted them by judgment of a competent court in the 1928 action, and it must follow that the plaintiffs and their predecessors have had continuous, open, notorious, and exclusive possession and occupancy of these premises before and since the 1928 judgment. " 'Riparian rights proper are held to rest upon title to the bank of the water and not upon title to the soil under the water; riparian rights proper being the same, whether the riparian owner owns the soil under the water or not.' " *Milwaukee v. State,* 193 Wis. 423, 441, 214 N. W. 820. The plaintiffs own the north bank of the outlet and are entitled to full riparian rights and to a judgment that further maintenance of said piers and boat slips by the city constitutes an invasion of those riparian rights. The plaintiffs are therefore entitled to enjoin the city from hindering or interfering therewith.

*By the Court.*—Judgment denying plaintiffs' rights is reversed, and cause is remanded for further proceedings in accordance with this opinion.

GEHL, J., took no part.