NORTHERN STATES POWER COMPANY, Petitioner-Appel-
lant-Petitioner,†

v.

Mark D. BUGHER, Individually and as an Official, The
Secretary of Revenue, Department of Revenue of The
State of Wisconsin, Michael Ley, Individually and as
an Official, The Former Secretary of Revenue, Depart-
ment of Revenue of The State of Wisconsin, Karen A.
Case, Individually and as an Official, The Former
Secretary of Revenue, Department of Revenue of The
State of Wisconsin, and all their Unknown Agents,
Employees, Successors in Office, Assistants and all
Others Acting in Concert or Cooperation with the cur-
rent Secretary of Revenue, Department of Revenue of
The State of Wisconsin, or at the direction of the cur-
rent Secretary of Revenue, Department of Revenue of
the State of Wisconsin, Respondents-Respondents.

Supreme Court

*No. 92–1634. Oral argument November 9, 1994.—Decided
January 18, 1995.*

(Also reported in 525 N.W.2d 723.)

†Motion for reconsideration denied March 1, 1995.

543

For the petitioner-appellant-petitioner there were briefs by *Robert A. Schnur, Sara M. Berman* and *Michael, Best & Friedrich,* Milwaukee and oral argument by *Robert A. Schnur.*

For the defendants-respondents the cause was argued by *Gerald S. Wilcox,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

WILCOX, J. This is a review of an unpublished decision of the court of appeals, which affirmed the circuit court's dismissal of Northern States Power Company's 42 U.S.C. sec. 1983 claim relating to the constitutionality of sec. 71.04(5)(d)1, STATS. (1975).[1] Both the circuit court and the court of appeals held that Northern's claim was precluded from consideration. They did so, however, on different grounds. The circuit

---

[1] Section 71.04, STATS. (1975), reads in relevant part:

**Deductions from gross income of corporations.** Every corporation, joint stock company or association shall be allowed to make from its gross income the following deductions:

. . ..

(5) (a) Charitable contributions, as defined in par. (d), payment of which is made within the year, to an amount not in excess of 5 per cent of the taxpayer's net income of the calendar or fiscal year as computed without the benefit of this section.

. . ..

(d) For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of:

1. The state of any political subdivision thereof, but only if the contribution or gift is made for exclusively public purposes.

court of Dane County, Honorable Jack Aulik presiding, dismissed Northern's sec. 1983 claim based on res judicata principles. The court of appeals concluded that Northern had failed to avail itself of statutorily required administrative remedies prior to pursuing its sec. 1983 claim. The issue on review here is: Whether a sec. 1983 claim, relating to the constitutionality of a state tax, is available to a taxpayer who has pursued all administrative and judicial remedies without fully presenting its constitutional arguments to the Tax Appeals Commission as required. We conclude that it is not.

This case has a chronologically long and procedurally complex history. Northern is a Wisconsin corporation engaged in the production and sale of electricity. In 1975 and 1976, Northern donated lands located in Wisconsin to the federal government for the creation of the St. Croix National Scenic Riverway. Northern then deducted the value of the donated lands pursuant to sec. 71.04(5)(d)1, STATS. (1975), which provides that donations to "[t]he state [of Wisconsin] or any political subdivision thereof" are deductible in calculating franchise taxes.[2] With claimed carryovers from its Wisconsin franchise taxes, Northern thereby reduced its state tax payments for 1976, 1977 and 1978.

On September 12, 1983, the Wisconsin Department of Revenue (DOR) determined that the deductions did not fall within the purview of sec. 71.04, STATS. (1975) and were therefore improper. The DOR

_____

[2] The present statutory scheme no longer treats gifts to the federal government differently from those given to the State of Wisconsin. *See* sec. 71.22, STATS. through sec. 71.30, STATS. This legislative change occurred in 1987 with the enactment of 1987 Wis. Act 27 § 1272k.

assessed Northern's withheld payments from 1976, 1977 and 1978 as increased tax liability, reasoning that charitable contributions made to the United States government were not deductible for state tax purposes. When Northern's petition to the DOR for redetermination was denied, it filed a petition for review with the Wisconsin Tax Appeals Commission based only on statutory arguments. On June 19, 1986, the Commission issued a decision and order holding that Northern's conveyance to the federal government was not tax-deductible for Wisconsin tax liability purposes. At that time, Northern and the DOR entered into an agreement stipulating that another, entirely separate issue regarding accrued utility revenue would be held in abeyance pending federal litigation. The stipulation stated that the Commission would retain jurisdiction to hear and decide the accrued utility revenue issue at a later date.

On July 27, 1987, Northern appealed the Commission's decision to deny the tax deductions. The circuit court granted the DOR's motion to dismiss because Northern had not served the department with a copy of its appeal as required by sec. 227.53, STATS. In an unpublished opinion issued May 10, 1988, the court of appeals affirmed the circuit court's decision. Northern then petitioned this court for review. The petition was denied on June 21, 1988, for failure to file the petition in a timely manner.

Subsequently, the previously stipulated accrued utility revenue issue was resolved and a new stipulation was entered between the parties. On March 31, 1989, the Commission issued an order reflecting the new stipulation. Northern appealed from this order, arguing that "sec 71.04(5)(a) and (d)1, STATS. (1975), were unconstitutional under the doctrine of intergov-

ernmental tax immunity because the Wisconsin statute denied deductions for gifts to the United States Government while permitting deductions for identical gifts to the State of Wisconsin." On January 19, 1990, the circuit court issued a "Memorandum and Decision Order" granting the DOR's motion to dismiss the appeal since Northern had not timely raised its constitutional claim in the initial proceedings before the Commission. Northern appealed, and on March 21, 1991, the court of appeals upheld the circuit court's decision to dismiss the action. Northern petitioned this court for review which was denied on July 30, 1991.

On November 21, 1991, relying on *Hogan v. Musolf,* 163 Wis. 2d 1, 471 N.W.2d 216 (1991) *cert. denied,* 112 S. Ct. 1081 (1992), Northern brought a third and separate action under 42 U.S.C. sec. 1983 in Dane County Circuit Court, naming as defendants, in both their official and individual capacities, Mark D. Bugher, Secretary of Revenue, two former Secretaries of Revenue and certain of their unknown agents, employees, successors in office, assistants, and others. Northern alleged that the Wisconsin tax unconstitutionally discriminated against donors to the federal government as compared with donors to the State of Wisconsin, thereby violating Northern's federal rights under sec. 1983. Northern requested that the circuit court take the following actions:

1. Enjoin the defendants from collecting the unconstitutional taxes until a final hearing and determination of the cause.

2. Permanently enjoin and restrain the defendants from collecting the unconstitutional taxes.

3. In the alternative, issue a mandamus to Mark D. Bugher, the current Secretary of Revenue, to

make a reassessment of the taxpayer's Wisconsin franchise taxes.

4. In the alternative, issue a Declaratory Judgment that the taxpayer may collect from Mark D. Bugher, in his individual capacity, the extent of the damages it will suffer if and when he or other defendants collect such unconstitutional taxes.

5. In the alternative, award monetary damages to the taxpayer against the present and named former Secretaries of Revenue, for failing to properly reassess the taxpayer's Wisconsin franchise taxes.

6. In the alternative, if the unconstitutional taxes were collected prior to judgment of the court, award monetary damages to the taxpayer against Mark D. Bugher, in his individual capacity.

7. Award the taxpayer its costs, disbursements and attorney's fees, as allowed by Section 1983.

8. Award any and all other just and appropriate relief to the taxpayer.

On January 3, 1992, defendants filed a motion to dismiss, contending that the taxpayer's action was barred by principles of sovereign immunity, qualified immunity and res judicata. On June 15, 1992, the circuit court, in a "Memorandum and Decision Order," granted the DOR's motion to dismiss, concluding among other things, the claim was barred by the well-established principles of res judicata. Northern appealed and the matter was certified to this court for review on July 30, 1993. This court denied review. The court of appeals subsequently affirmed the circuit court's decision to dismiss the sec. 1983 claim, albeit on different grounds. The court of appeals concluded that Northern failed to exhaust its administrative remedies because it did not raise the sec. 1983 claim before the

Commission in the first proceeding. Northern petitioned this court for review for the third time, and the petition was granted.

This case requires us to consider the preclusionary doctrine of res judicata. Res judicata has been afforded a variety of meanings, some of which reference and incorporate the concept of collateral estoppel. Res judicata and collateral estoppel are common-law doctrines that have as their underpinnings the policy considerations of fairness to the victor and judicial efficiency. Although they are related, the two doctrines are "independent preclusion concepts." *See Gregory v. Chehi,* 843 F.2d 111, 115 (3rd Cir. 1988). Several courts, in an effort "[t]o reduce the confusion that resulted from the interchangeable use of these terms, . . . have refined the nomenclature used in the preclusion doctrine." *Id.* The United States Supreme Court and the Restatement (Second) of Judgments use the terms "claim preclusion" and "issue preclusion in lieu of res judicata and collateral estoppel respectively." *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75 (1984).[3]

---

[3] A recent Arizona case explains the genesis of the terms "claim preclusion" and "issue preclusion":

> The terms "claim preclusion" and "issue preclusion" were popularized by the late Professor Allen Vestal of the University of Iowa College of Law. Ruth Bader Ginsburg, *The Work of Professor Allen Delker Vestal,* 70 Iowa L. Rev. 13, 15–16 (1984). Professor Vestal advocated the use of the descriptive terms "claim preclusion" and "issue preclusion" instead of the archaic phrases "res judicata" and "collateral estoppel." Vestal at 6–7. Professor Vestal hoped that the descriptive terms would make the doctrines of res judicata and collateral estoppel more understandable.

*Circle K Corp. v. Industrial Comm'n of Arizona,* 880 P.2d 642, 645 (Ariz. Ct. App. 1993). Since Professor Vestal's landmark book—ALLAN D. VESTAL, RES JUDICATA/PRECLUSION (1969)—a

We join in this trend and adopt the terms "claim preclusion" and "issue preclusion." The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel. *See, e.g., Edmundson v. Borough of Kennett Squares,* 4 F.3d 186, 188 (3rd Cir. 1993); *Gregory,* 843 F.2d at 116.

As this court recently explained, under claim preclusion " 'a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings.' " *Lindas v. Cady,* 183 Wis. 2d 547, 558, 515 N.W.2d 458, 463 (1994) (quoting *DePratt v. West Bend Mutual Ins. Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883, 885 (1983)). Further, claim preclusion is "designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." *Purter v. Heckler,* 771 F.2d 682, 689–90 (3rd Cir. 1985).

Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action. *Id.* at 689 n.5. Unlike claim

majority of federal and state jurisdictions have recognized the merits of utilizing the descriptive terms. *See, e.g., Meyer v. Rigdon,* 36 F.3d 1375 (7th Cir. 1994); *Baker Electric Cooperative, Inc. v. Chaske,* 28 F.3d 1466 (8th Cir. 1994); *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573 (6th Cir. 1994); *Little v. Pizza Wagon, Inc.,* 423 So. 2d 1269 (Ala. 1983); *Bagley v. Hughes A Bagley, Inc.,* 465 N.W.2d 551 (Iowa Ct. App. 1990); *Scalzo v. City of Danbury,* 617 A.2d 440 (Conn. 1992); *Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380 (N.D. 1992).

preclusion, an identity of parties is not required in issue preclusion. *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327, 330 (1993). Issue preclusion is a narrower doctrine than claim preclusion and requires courts to conduct a "fundamental fairness" analysis before applying the doctrine. *See id.* at 686–87, 495 N.W.2d at 330–31 ("Formalistic requirements . . . have gradually been abandoned in favor of a looser, equities-based interpretation of the doctrine."). Under this fundamental fairness analysis, "courts consider an array of factors in deciding whether issue preclusion is equitable in a particular case." *Lindas,* 183 Wis. 2d at 559, 515 N.W.2d at 463.

In the present case, only the application of claim preclusion is at issue. The question of whether claim preclusion applies under a given factual scenario is a question of law that this court reviews *de novo. See DePratt,* 113 Wis. 2d at 310, 334 N.W.2d at 885.

In order for the earlier proceedings to act as a claim-preclusive bar in relation to the present suit, the following factors must be present: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction. *Id.* at 311, 334 N.W.2d at 885; *Pliska v. City of Stevens Point, Wisconsin,* 823 F.2d 1168, 1172 (7th Cir. 1987). Our task is to determine whether the facts in this case meet these three requirements.

In the two previous actions, Northern proceeded against the Wisconsin Department of Revenue. The present suit, however, names the current and several past secretaries of the Department, in their official and

individual capacities, as well as "all others, acting in concert or cooperation with the current secretary," as defendants. This attempted distinction is without consequence. The nominal difference in naming the individual defendants to the suits cannot alter the otherwise apparent fact, that legally, the parties in both suits are identical. Officers, employees and agents of the DOR when making tax assessments and determinations, act in their official capacity on behalf of the department. In *Landess v. Schmidt,* 115 Wis. 2d 186, 197, 340 N.W.2d 213, 218 (Ct. App. 1983), the court of appeals held that a prior suit against an employer bars a subsequent identical suit against its employees acting in their official capacities.

> The injured person, Landess, is bringing an action against defendants, the employees, who were not named in the prior action. There was, however, a judgment against Landess in the prior tort and breach of contract action. *See Landess, supra,* at 632–33. We have held that the prior judgment bars Landess from reasserting the conspiracy claim against Borden. Therefore, we also hold that the prior judgment against Borden extinguishes the conspiracy claim against the employees. *See* Restatement (Second) of Judgments § 51(1) (1982).

*Id.* at 196–97, 340 N.W.2d at 218.

■

Further, where a state official is represented by state-provided counsel, as here, the state will be bound by a judgment against said official even where the state is not a party to the suit. *Barry Labs., Inc., v. Wisconsin State Bd. of Pharmacy,* 26 Wis. 2d 505, 511–12, 132 N.W.2d 833, 835–36 (1965); *see also* sec. 895.46, STATS. (judgment against state employee as an official or as an individual while carrying out duties as an employee

shall be paid by the state). As this court recognized in *Barry*, "[i]f the state is bound by the result in any event, the reason for the distinction between suing the officers and suing the agency vanishes." *Barry* at 511–12, 132 N.W.2d at 836; *see also Omernick v. LaRocque*, 406 F. Supp. at 1159–60 (W.D. Wis. 1976) (where state officials were being sued for acts done in their official capacity and were represented by government counsel "they were sufficiently closely related to the state for purposes of these actions that they are bound by judgment against the state and other officers concerning the validity of state statutes at issue and conversely can assert such judgments as [claim preclusion]"). In sum, we agree with the circuit court's assertion: "[I]t is undisputed that [Northern] and defendant DOR were parties to the prior litigation and the defendants, all present and former officers and agents of DOR, and the alleged decision-makers, are in privy with the agency."

The next question is whether there exists an identity of causes of action or claims between the previous proceedings and those presently before us. Wisconsin has adopted a transactional approach to determining whether two suits involve the same cause of action. *DePratt*, 113 Wis. 2d at 311–12, 334 N.W.2d at 886. The transactional approach derives from RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982):

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

As we referenced in *DePratt,* the commentary to § 24 is instructive:

"The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split."

*DePratt,* 113 Wis. 2d at 311, 334 N.W.2d at 886 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24, comment a (1982)). Thus, " 'if both suits arise form the same transaction, incident or factual situation, [claim preclusion] generally will bar the second suit.' " *Pliska* 823 F.2d at 1172 (citations omitted).

■

Applying the transactional approach to the facts at hand, we conclude that there is identity of claims between the causes of action in the two proceedings. At every stage of the proceedings, Northern's underlying claim has been that it is entitled to a deduction for state income tax purposes based on its gift of land to the federal government. Granted, Northern first petitioned for relief solely on the grounds of a statutory interpre-

tation argument. During this first proceeding, Northern never attacked the constitutionality of the sec. 71.04(5)(d)1, STATS. (1975). Only after this argument proved unsuccessful before the DOR and the Tax Appeals Commission did Northern then attempt to argue the constitutionality issue by commencing a second action. As noted in *DePratt,* however, the transactional view of claim preclusion requires "the presentation in the action of all material relevant to the transaction without artificial confinement to any substantive theory or kind of relief . . ." *DePratt,* 113 Wis. 2d at 311–12, 334 N.W.2d at 886. Further, as explained in the RESTATEMENT (SECOND) OF JUDGMENTS § 24, comment a (1982), the number of substantive theories that may be available to the plaintiff is immaterial—if they all arise from the same factual underpinnings they must all be brought in the same action or be barred from future consideration. Throughout the entire proceedings, Northern sought the same relief—a deduction from payment of its franchise taxes, based on the same incident—the DOR's determination that Northern was not entitled to the deduction.

Finally, there is no dispute that a final judgment on the merits of Northern's initial claim has been entered. True, the judgment makes no reference as to whether sec. 71.04(5)(d)1, STATS. (1975), passes constitutional muster. This point, however, as the parties recognize, is not dispositive since the judgment, although not tackling the substantive claim, did nonetheless finally dispose of the claim. As proof of this point, Northern has appealed from this judgment to the court of appeals, as well as to this court.

We conclude that all of the requirements for the defense of claim preclusion as to Northern's sec. 1983

claim concerning the constitutionality of sec. 71.04(5)(d)1, STATS. (1975), have been met in this case.[4] Our inquiry into the matter, however, is not complete. Northern claims that this court's recent decision in *Hogan v. Musolf,* 163 Wis. 2d 1, 471 N.W.2d 216 (1991) *cert. denied,* 112 S. Ct. 1081 (1992), carves out an exception to the doctrine of claim preclusion for suits filed under the auspices of sec. 1983.

In *Hogan,* plaintiffs were retired federal employees who argued that Wisconsin's scheme of taxing federal retirement benefits, while exempting from taxation benefits paid to retired state employees, violated principles of intergovernmental tax immunity. *Id.* at 7–8, 471 N.W.2d at 217–18. The plaintiffs filed a sec. 1983 claim against the Secretary of the DOR seeking declaratory and injunctive relief. *Id.* at 8, 471 N.W.2d at 218. The DOR responded to the claim by filing a motion to dismiss asserting, *inter alia,* that the plaintiffs had failed to exhaust their state administrative remedies. *Id.* at 9, 471 N.W.2d at 218. The circuit court denied the DOR's dismissal request and set the case for a trial on the merits. *Id.* The DOR then appealed to the court of appeals which affirmed the circuit court. *Id.*

---

[4] Further, there is no legislative suggestion that sec. 1983 claims are to be granted immunity from the principles of claim preclusion. The United States Supreme Court has stated that "nothing in the language of sec. 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion . . . [and] [m]oreover, the legislative history of sec. 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion." *Allen v. McCurry,* 449 U.S. 90, 97–98 (1980); *see also University of Tennessee v. Elliott,* 478 U.S. 788, 796 (1986) (state-court judgments are to be given both issue and claim preclusive effect in subsequent actions pursuant to sec. 1983).

On appeal to this court, "[t]he primary issue presented [was] whether these retirees must exhaust their state administrative remedies before filing a sec. 1983 action in state courts." *Id.* at 6, 471 N.W.2d at 217. To properly address the primary issue, however, this court considered four sub-issues. *Id.* First, we concluded that violations of 4 U.S.C. sec. 111 are actionable under color of a sec. 1983 claim. *Id.* at 10–12, 471 N.W.2d at 219. Second, we concluded that when a state's administration of its tax statutes is challenged, federal law permits the states to require plaintiffs to exhaust applicable administrative remedies before pursuing a sec. 1983 claim if those remedies are "plain, adequate and complete." *Id.* at 12–19, 471 N.W.2d at 219–223. Third, we held that the administrative procedures available to a taxpayer seeking review of a tax claim in Wisconsin are plain, adequate and complete. *Id.* at 20–23, 471 N.W.2d at 223–24. And fourth, we determined that Wisconsin law requires that plaintiffs challenging the administration of state taxing statutes must exhaust available state administrative remedies before commencing a sec. 1983 action in a Wisconsin court. *Id.* 23–26, 471 N.W.2d at 224–26.

In considering the third sub-issue in *Hogan,* we made the following statement which is at the heart of the instant appeal:

> If the alleged violations of [the taxpayer's] federal rights are not rectified through resort to the Wisconsin agencies and judicial review, then plaintiffs will be able to assert their sec. 1983 action in a state or federal court.

*Id.* at 23, 471 N.W.2d 224. Northern asserts that this statement in *Hogan* "establishes a two-step process for challenging the constitutionality of a Wisconsin tax,

namely (i) an administrative proceeding, followed by the regular judicial review of that proceeding, all in accordance with the usual state proceedings provided for any challenge to a Wisconsin tax assessment, and (ii) if the taxpayer is unsuccessful in those administrative and judicial proceedings, a follow-up Section 1983 action in state or federal court." Northern recognizes that, if followed, this two-step process would create an exception to the usual rules of claim preclusion. Nonetheless, Northern believes that *Hogan* considered the options and decided that this exception was appropriate. We are not similarly persuaded.

*Hogan* did not consider the issue of claim preclusion. The petition for review in *Hogan,* as well as the briefs submitted for consideration to this court, are simply devoid of even a tangential reference to the doctrine of claim preclusion. Rather, as explained above, that case dealt primarily with whether taxpayers must exhaust applicable state administrative remedies prior to filing a sec. 1983 action. The doctrine of claim preclusion is one of long standing with considerable precedent as its underpinning.[5] In addressing the exhaustion doctrine in *Hogan,* it was never our intent to infringe on any principle relating to the long-standing precedent of claim preclusion.

In the present case, the conclusion is inescapable that Northern had a fair opportunity to litigate its constitutional issue during the administrative and state judicial proceedings had it brought the issue in a timely fashion before the Tax Appeals Commission. Despite Northern's assertions to the contrary, alleging consti-

[5] *See, e.g., Barbian v. Linder Bros. Trucking Co., Inc.,* 106 Wis. 2d 291, 316 N.W.2d 371 (1982); *Hermansen v. City of Lake Geneva,* 272 Wis. 293, 75 N.W.2d 439 (1956); *Werner v. Riemer,* 255 Wis. 386, 39 N.W.2d 457 (1949).

tutional claims before the Commission is not an exercise in futility. *See Hogan,* 163 Wis. 2d at 21–22, 471 N.W.2d at 223–24 (DOR and Commission have authority in limited situations to determine whether application of Wisconsin taxing scheme passes constitutional muster). Moreover, there is no allegation that the prior proceedings were inadequate and incomplete in a manner that would necessitate or allow the filing of the type of sec. 1983 claim envisioned under *Hogan.*

In summary, the doctrine of claim preclusion provides an effective and useful means to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94 (citations omitted). Despite Northern's assertions to the contrary, we conclude that *Hogan* was not meant to encroach on these well established principles underlying the doctrine of claim preclusion. We further conclude that Northern's claim regarding the constitutionality of sec. 71.04(5)(d)1, STATS. (1975), based on a straightforward application of the claim preclusion doctrine, is barred due to Northern's failure to have raised the claim during the initial proceedings.

*By the Court.*—The decision of the court of appeals is affirmed.