## COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 31, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1099**

Cir. Ct. No. **2021TR1741R**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL A. WILSON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed*.

¶1     NASHOLD, J.[1] Michael A. Wilson appeals a judgment of conviction for refusing to take an evidentiary test for intoxication as requested by a police officer. He argues that the circuit court erred in failing to dismiss the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

current refusal action because it was barred by the doctrine of claim preclusion and because the officer lacked reasonable suspicion to stop his vehicle. I reject these arguments and therefore affirm.

## BACKGROUND

¶2 The following facts are taken from the refusal hearing in this matter. On December 6, 2018, at approximately 9:05 p.m., a City of Columbus police officer received information from dispatch that a concerned citizen had called from a specified bowling alley saying that a person operating a red sedan had left the bowling alley and was going south on Industrial Drive, and that the person operating the vehicle was intoxicated. Dispatch relayed to the officer that the caller was willing to give a statement and provide his or her identity.

¶3 Approximately five minutes later, the officer observed a red sedan traveling on James Street, about two miles from the bowling alley, which was consistent temporally and geographically with the caller's information. The officer followed the red sedan and observed it engage in an "S-shaped swerve" on two occasions, going from the yellow center line to the white line separating the vehicle lane from the bicycle lane. Although at no point did the officer observe the vehicle cross the yellow center line, the vehicle did cross the white line at least once.

¶4 The officer executed a traffic stop of the vehicle and made contact with its operator, Wilson. Wilson had slurred speech and bloodshot and glassy eyes, and the officer detected an "odor of intoxicants coming from the interior of the vehicle." Wilson told the officer that he was coming from a bar, and that he had not had a lot to drink. At that point, the officer requested that Wilson exit the vehicle and perform standardized field sobriety tests.

2

¶5    Following administration of field sobriety tests and a preliminary breath test, Wilson was placed under arrest, and the officer read Wilson the Informing the Accused form in compliance with WIS. STAT. § 343.305(4). Wilson was asked to submit to an evidentiary test of his blood, which he refused. As a result of the refusal, the officer issued a notice of intent to revoke Wilson's operating privilege on December 6, 2018, and Wilson was also issued a citation for operating while intoxicated (OWI) as a first offense. Wilson subsequently appeared in Columbia County municipal court and resolved the matter by pleading no contest to first-offense OWI in exchange for dismissal of the refusal action.

¶6    On January 24, 2020, Wilson was charged with another OWI offense in Fond du Lac County, case No. 2020-CF-50.[2] Wilson filed a motion in Columbia County municipal court to reopen and dismiss the first-offense OWI on grounds that the municipal court lacked competency to adjudicate the matter because the OWI should have been charged as a second offense due to a prior OWI conviction. While Wilson's motion was pending, on October 14, 2020, Wilson and counsel for the City of Columbus entered into a stipulation, accepted by the municipal court, whereby the first-offense OWI conviction was reopened and amended to a conviction for reckless driving. The City did not require the 2018 refusal action that had been dismissed to be reopened.

¶7    On February 26, 2021, a different officer issued a new notice of intent to revoke Wilson's operating privilege. Thereafter, Wilson filed a request

_____

[2] Although the hearing transcript contains information regarding the Fond du Lac case, including the case number, that the charges arose in 2020, and that Wilson pled to and was adjudicated guilty of OWI, the January 24, 2020 date is taken from Wisconsin's Consolidated Court Automation Programs (CCAP). *See State v. Aderemi*, 2023 WI App 8, ¶7 n.3, 406 Wis. 2d 132, 139, 986 N.W.2d 306 (we may take judicial notice of CCAP records).

for a refusal hearing, along with a motion to dismiss the 2021 refusal action, and the State filed a response.

¶8      The circuit court held a hearing, at which it first addressed Wilson's motion to dismiss.  Pertinent here, Wilson argued that, because the City had moved to dismiss the 2018 refusal action in municipal court in 2018 and did not seek to have it reinstated in 2020 as part of the stipulation to reopen and amend the OWI citation to a reckless driving citation, and because the municipal court was a proper venue for the 2018 refusal action, the State could not, years later, bring the current, 2021, refusal action.

¶9      In response, the State argued that the 2018 refusal action was improperly filed in municipal court because Wilson had a prior OWI conviction. As a result, the State argued, the municipal court lacked competency to adjudicate the 2018 refusal action.  Wilson responded that, because the 2018 refusal action had been dismissed in 2018, claim preclusion applied to bar the 2021 refusal action.[3]

¶10     The circuit court denied Wilson's motion to dismiss the 2021 refusal action.  Pertinent here, the court determined that, although the 2018 refusal action was dismissed by the municipal court, that adjudication was without legal effect because the municipal court lacked competency to adjudicate the 2018 refusal action in light of Wilson's prior OWI conviction.  Thus, the 2021 refusal action was properly before the circuit court.

---

[3] Wilson used the phrase *res judicata* rather than claim preclusion.  However, our courts have recognized that *res judicata* is now referred to as claim preclusion.  *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

¶11     After the circuit court denied Wilson's motion to dismiss the 2021 refusal action, the court held the refusal hearing that Wilson requested. The court heard testimony from the officer regarding the stop of Wilson's vehicle, the field sobriety and preliminary breath tests, Wilson's arrest for OWI, and Wilson's refusal to submit to evidentiary testing for intoxication, as summarized above.

¶12     Following the officer's testimony and arguments from the parties, the circuit court ruled that Wilson's refusal was improper. Pertinent to this appeal, in reaching this conclusion, the court determined that there was reasonable suspicion to support the stop of Wilson's vehicle based on the officer's observation of the vehicle engaging in two S-swerves, its crossing the white line separating the vehicle lane from the bicycle lane, and the citizen caller's information regarding Wilson's intoxication, the latter of which the court characterized as "icing on the cake." Accordingly, the court entered a judgment of conviction for Wilson's refusal. Wilson appeals.

## DISCUSSION

¶13     Wilson appeals his judgment of conviction for refusing to take an evidentiary test for intoxication following his arrest for OWI. *See* WIS. STAT. § 343.305(9)(a). He makes two arguments on appeal. First, he argues that the State is barred under the doctrine of claim preclusion from bringing the 2021 refusal action because the 2018 refusal action was dismissed as part of a plea agreement during which the City did not move to reopen the dismissed 2018 refusal action, and the State did not file the 2021 refusal action until approximately twenty-six months after Wilson's offense. Second, Wilson argues that the circuit court erred in concluding that he improperly refused evidentiary testing for

intoxication because the officer lacked reasonable suspicion to stop his vehicle. I address and reject these arguments, in turn.

*I. Claim Preclusion*

¶14 Claim preclusion makes a final adjudication on the merits in a prior action a bar to later actions between the same parties as to all matters that were or could have been litigated in the earlier action. ***Northern States Power Co. v. Bugher****,* 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995). Claim preclusion has three elements: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." ***Id.*** at 551. "The burden of proving claim preclusion is upon the party asserting its applicability." ***Pasko v. City of Milwaukee***, 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72. Whether claim preclusion applies to a particular factual scenario is a question of law subject to de novo review by this court. ***Id.***

¶15 The primary dispute in this case centers on the third element of claim preclusion: whether there was a final judgment with respect to the original refusal in a "court of competent jurisdiction." Wilson concedes that the municipal court "lacked competence to exercise its subject matter jurisdiction over the refusal citation in light of the fact that it arose from what was factually a second-offense OWI charge." According to Wilson, however, claim preclusion nevertheless applies based on the following premises.

¶16 Wilson first argues that, consistent with ***City of Cedarburg v. Hansen***, 2020 WI 11, 390 Wis. 2d 109, 938 N.W.2d 463, although the municipal court lacked competency to exercise subject matter jurisdiction over the original refusal, the municipal court had subject matter jurisdiction, a premise I accept as

true for purposes of this appeal.  He accurately notes that, unlike challenges to subject matter jurisdiction, challenges to a court's competency to exercise its subject matter jurisdiction are forfeited if not timely raised in that court.  *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶¶30, 38, 273 Wis. 2d 76, 681 N.W.2d 190.  Wilson argues that here, the State forfeited any challenge regarding the municipal court's competency to adjudicate the 2018 refusal action by:  the City's failure to raise the competency issue when the 2018 refusal action was dismissed in municipal court; the City's failure to raise the issue in 2020 when the City and Wilson stipulated, and the municipal court agreed, to reopen the OWI conviction and amend the conviction to reckless driving; and the State's failure to bring the 2021 refusal action until approximately twenty-six months after Wilson's offense.  For the following reasons, I agree with the State that Wilson's argument must be rejected as undeveloped and unsupported by authority.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped legal arguments and arguments unsupported by references to legal authority will not be considered).

¶17    As stated, the third element of claim preclusion requires that there be a final judgment on the merits "by a court of competent jurisdiction."  *Bugher*, 189 Wis. 2d at 551.  Wilson does not argue that the municipal court was a court of "competent jurisdiction" with respect to the 2018 refusal action.  In fact, he expressly concedes that the municipal court "lacked competence to exercise its subject matter jurisdiction over the refusal citation."  Instead, Wilson's argument appears to be that the "competent jurisdiction" element is satisfied because the City, the State, or both failed to challenge the municipal court's competency.  But Wilson offers no authority or reasoned explanation for the proposition that a court otherwise lacking "competent jurisdiction" for purposes of claim preclusion may

be conferred with such by virtue of a party's failure to challenge the court's competency. In other words, although Wilson is correct that a party may forfeit a challenge to the court's competency to exercise its subject matter jurisdiction, it does not necessarily follow (nor does Wilson cite any authority establishing) that such forfeiture results in the court's gaining such competency, particularly for purposes of satisfying the third element of claim preclusion. Accordingly, because Wilson has failed to develop a legal basis for his assertion that the third element of claim preclusion is satisfied, I affirm the circuit court's determination rejecting his argument that claim preclusion barred the State from initiating the 2021 refusal action.

## II. Reasonable Suspicion

¶18 Wilson next argues that the circuit court erred in denying his motion to dismiss the 2021 refusal because the officer lacked reasonable suspicion to stop his vehicle.[4] *See* **State v. Anagnos**, 2012 WI 64, ¶41, 341 Wis. 2d 576, 815 N.W.2d 675 (lack of reasonable suspicion for stop may be raised as an issue at a refusal hearing). I disagree.

¶19 A police officer may make an investigatory stop of a vehicle if the officer reasonably suspects that the driver has committed or is about to commit a crime or reasonably suspects that a person is violating a noncriminal traffic law. **County of Jefferson v. Renz**, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999). The officer's suspicion must be grounded upon "specific and articulable facts which,

---

[4] From my nonexhaustive examination of the record, it does not appear that Wilson challenged the 2021 refusal action in circuit court based on lack of reasonable suspicion for the stop. However, because the State does not raise a forfeiture argument, I likewise do not address it.

taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop." *State v. Tomaszewski*, 2010 WI App 51, ¶6, 324 Wis. 2d 433, 782 N.W.2d 725 (internal quotation marks and quoted source omitted). This court determines the reasonableness of the stop based on the totality of the facts and circumstances. *Id.* "The required showing of reasonable suspicion is low." *State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. Whether there is reasonable suspicion to conduct a stop is a question of constitutional fact, to which this court applies a two-step standard of review: the circuit court's findings of fact are upheld unless they are clearly erroneous, and the determination of reasonable suspicion is reviewed de novo. *State v. Williams*, 2001 WI 21, ¶18, 241 Wis. 2d 631, 623 N.W.2d 106.

¶20 Based on the totality of facts known to the officer at the time of the stop, I conclude that the officer had reasonable suspicion to believe that Wilson was committing a crime, namely OWI.[5] Prior to stopping Wilson's vehicle, the officer was aware of the following: (1) a caller from a local bowling alley—who was willing to make a statement and identify himself or herself—made a citizen complaint that Wilson had just left the bowling alley and was driving intoxicated; (2) the caller provided a description of the vehicle Wilson was driving (a red sedan) and the direction the vehicle was traveling; (3) the officer observed a red sedan at a time and location that were consistent with the caller's information; (4) the officer observed the vehicle engage in two "S-shape swerve[s]"; and (5) the officer observed the vehicle cross the white line into the bike lane.

---

[5] The State does not argue that crossing the white line into the bike lane constituted a traffic violation so as to provide, in itself, reasonable suspicion for the stop. Therefore, I do not address that issue.

¶21 Notably, Wilson provides no authority supporting his position that the officer in this case lacked reasonable suspicion of OWI. Instead, he first relies on two inapposite cases involving extensions of traffic stops to investigate suspicion of drug-related activity, *State v. Betow*, 226 Wis. 2d 90, 593 N.W.2d 499 (Ct. App. 1999), and *State v. Gammons*, 2001 WI App 36, 241 Wis. 2d 296, 625 N.W.2d 623. The facts of these cases are not remotely analogous to those present here.

¶22 Wilson also relies on *State v. Post*, 2007 WI 60, ¶14, 301 Wis. 2d 1, 733 N.W.2d 634, in which our supreme court rejected the State's argument that there should be a bright-line rule that weaving within a single lane constitutes reasonable suspicion supporting a stop to investigate whether the operator of the vehicle is impaired. However, *Post* is likewise unavailing because the instant case does not involve only weaving within a traffic lane. Moreover, based on the nature of the weaving that did occur in *Post*, the defendant's driving for a period of time in the parking lane rather than in the designated traffic lane, and the fact that the incident occurred at 9:30 p.m. (a time very close to the time of the offense here), the court concluded in *Post* that there was reasonable suspicion of OWI so as to justify the stop. *See id.*, ¶¶30-36. Thus, to the extent *Post* is relevant here, it undermines, rather than supports, Wilson's argument.

¶23 Other precedent further supports the conclusion that the officer in this case had reasonable suspicion of OWI. For example, in *State v. Rutzinski*, 2001 WI 22, 241 Wis. 2d 729, 623 N.W.2d 516, our supreme court held that an officer had reasonable suspicion of OWI based on a tip the officer received through dispatch that an unidentified motorist had called to report a black pickup truck weaving within its lane, varying its speed from too fast to too slow, and tailgating. *Id.*, ¶¶3-4. Although the officer himself did not observe any erratic

driving before stopping vehicle, the ***Rutzinski*** court nonetheless upheld the legality of the stop. In so doing, the court noted that the informant had exposed himself or herself to being identified; that the informant provided verifiable information based on personal observations, including a description of the defendant's vehicle and the direction in which it was traveling; and that the tip suggested that the defendant "posed an imminent threat to the public's safety." ***Id.***, ¶¶32-34.

¶24 Similarly, in ***Anagnos***, our supreme court concluded that the following facts gave rise to reasonable suspicion of OWI: at approximately 1:15 a.m., an officer observed the defendant's vehicle: exit a parking lot and make a left turn by crossing a highway divided by an elevated median, accelerate rapidly to a stoplight, execute a second left turn without signaling, and again accelerate rapidly. ***Anagnos***, 341 Wis. 2d 576, ¶¶5-6. In reaching this conclusion, the supreme court assumed that the circuit court had correctly determined that the officer did not observe the defendant violate any laws prior to the stop, including by driving over the median. ***Id.***, ¶¶44, 46. Nevertheless, the court held that reasonable suspicion supported the stop because the facts, as articulated by the officer, "lead to a reasonable suspicion that the driver of the vehicle made a series of unusual and impulsive driving choices, suggestive of impairment." ***Id.***, ¶56.

¶25 In light of this case law and Wilson's failure to provide any authority that supports his position, I conclude that Wilson's challenge based on lack of reasonable suspicion is without merit.

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.